ELLER JESSUP, ADMINISTRATOR OF THE ESTATE OF DARRELL LEE JESSUP,
    DECEASED, v. HIGH POINT, THOMASVILLE AND DENTON RAILROAD
    COMPANY, A CORPORATION.

(Filed 6 June, 1956.)

**1. Railroads § 5: Negligence § 4b—**

Evidence that on infrequent occasions boys boarded and rode moving
cars in defendant's yard within a city, without evidence of acquiescence
therein by defendant's employees, is insufficient to show an implied invita-
tion to children to do so, there being a distinction between a temptation on
the part of a trespasser to enter upon another's property and an invitation
on the part of the owner for him to do so.

**2. Negligence § 4b—**

Where children enter upon lands without invitation or inducement equiv-
alent to an invitation, they are trespassers, and the landowner owes them
only the duty not to injure them willfully or wantonly.

**3. Same: Railroads § 5—**

A railroad company is not under duty to guard every approach to its
tracks and trains so as to make its premises child-proof, and may not be
held liable for the death of a child who, without express or implied invita-
tion, attempts to board a moving freight car and is killed.

**4. Railroads § 5—**

A railroad company cannot be held liable for the death of a child killed
in attempting to board a moving car on the ground that its employee, who
was standing nearby, failed to restrain the child, when the evidence dis-
closes that prior to the accident the boy was in a place of safety where he
had a lawful right to be and suddenly lunged at the train in such manner
and with such speed that the employee had no opportunity to prevent the
injury.

PARKER, J., dissents.

APPEAL by the plaintiff from *Crissman, J.,* 5 December, 1955 Regular
Term, GUILFORD Superior Court (High Point Division).

Civil action to recover damages for the wrongful death of Darrell
Lee Jessup.

Without regard to the numbered paragraphs, the complaint in sub-
stance alleges:

1. The plaintiff's intestate, a boy seven years and nine months of age,
was killed by the defendant's freight train in movement over its double
track line at Ennis Street in the City of High Point. It was the custom
of the defendant to shift freight cars over its lines and over spur tracks
at and near Ennis Street—one of the public streets of the city.

2. Children living in the community prior to the accident were in the habit of catching freight cars and riding them for short distances by holding on to the ladders while they were in movement during shifting operations and that this custom and habit of the children were known to the defendant's train crews and other agents and employees. No effort, or an insufficient effort was made to protect these children and warn them of the danger involved.

3. On 30 November the plaintiff's intestate approached the crossing at Ennis Street at a time when freight cars were being moved slowly over the track. At the time, a member of the train crew was standing on the south side of the track near the center of Ennis Street and within a few feet of the track.

4. Plaintiff's intestate approached the track, passed within a few feet of the crew member, and without warning from him attempted to catch next to the last car in the moving train; and in the attempt was killed.

5. The proximate cause of the accident was the negligence of the defendant in permitting children to ride the cars as had become their habit, and in permitting the plaintiff's intestate to attempt to catch the moving car in the presence of the defendant's agent without any effort on his part to prevent the attempt.

The defendant admitted, "On infrequent occasions boys would board defendant's freight train when it was shifting in the High Point yard, but would always board it some distance from stations on said train occupied by the train crews and would always get off before they could be caught. At all times it attempted to prevent children from boarding and riding its train or playing on its right of way." All allegations of negligence were denied.

The only eye witness to the accident who gave evidence in the case was A. S. Hazzard, a witness for the plaintiff. His testimony may be summarized as follows: He was repairing a church roof about 100 to 150 feet from the scene of the accident. At the time the train of about seven cars was crossing Ennis Street at about 10 or 15 miles per hour, four or five small boys, one of whom was Darrell Lee Jessup, approached the crossing at Ennis Street from the south. A member of the train crew was standing within about three or four feet of the passing train, with his back to it, and facing south on Ennis Street. As the boys approached, four of them remained on the right-hand side of the street facing the tracks. The Jessup boy crossed over to the left, and when he was about six feet from the crewman he appeared to lunge at the train, seemed to miss his attempt to catch the ladder, and appeared to bounce back from the train. He had attempted to catch the rear of the next to the last car or the front of the last car as it passed over

Ennis Street. The trainman caught the last car as it passed, climbed to the top and crossed over to the right-hand side. "The kid made a leap for the train" after he passed the trainman. "He was standing there, and lunged like that, he made a quick attempt to get on the train after he passed the trainman."

Charles Carroll, a plaintiff's witness, testified in substance: He is 14 years of age and lived near the crossing. He had ridden the defendant's train at least 10 times. He rode the train for a short distance by grabbing and holding on to the ladder. At one time he observed a member of the crew on the back of the last car. The crewman saw him when he got off. The train was moving. He was never warned to stay off the train. His brother, age 10, had also ridden the train. He had seen Darrell Lee Jessup ride the train before the day of the accident.

Paula Jean Allen testified she is 13 years of age and lived on Ennis Street near the crossing. She had seen children riding the train by hanging on to the ladders; she never saw any trainman when the children were riding, except on one occasion she saw someone in the cab.

Mrs. Havannah Allen testified she lived near the crossing. Small children played along the track most every day when the weather permitted. There is a pathway along the track. She had seen children near the track throwing sticks, papers and bottles under the wheels of the train as it passed. On one occasion a boy left a baby under one year old on the track. The train stopped before it ran over the baby. She had seen members of the train crew on one occasion wave at the children and the children waved back. She did not see the Jessup boy attempt to catch the train. However, she did see another boy, David Carroll, hanging on the side of one car near the front of the train.

At the conclusion of the plaintiff's evidence the court allowed the defendant's motion for judgment of nonsuit. From the judgment according, the plaintiff appealed.

*W. B. Byerly, Jr., and Rufus K. Hayworth, Jr., for plaintiff, appellant.*

*James B. Lovelace for defendant, appellee.*

HIGGINS, J. The defendant admitted in the answer that on infrequent occasions boys had boarded and ridden its freight cars in its yard in the City of High Point. Coupled with the admission, however, and as a part of it, is the averment that in boarding the cars the boys did so at a distance from the stations occupied by the train crew, thereby eluding efforts to apprehend them.

The evidence introduced by the plaintiff is sufficient to show that Charles Carroll, age 14, had ridden defendant's train at least on 10

occasions; that on one occasion a member of the crew saw him. His younger brother had also ridden the train. Paula Jean Allen had observed boys riding the train on several occasions, once when a member of the crew was in the cab. Mrs. Havannah Allen testified there was a path along the tracks between street crossings and that children played along that path when the weather permitted. She had seen children throwing sticks and paper under moving cars. At the time of the accident she saw David Carroll hanging onto a freight car near the front of the train, though she did not see the rear of the train.

The evidence, when analyzed, shows about what the defendant admitted: That on infrequent occasions boys boarded and rode moving cars in defendant's yard. The admission of the defendant and the evidence of the plaintiff are not sufficient to charge the defendant with actual notice that children were in the habit of catching defendant's moving freight cars to the extent that permission to do so may be presumed. Children were uninvited and, therefore, at least technical trespassers. The duty owed to trespassers is that they must not be willfully or wantonly injured. That children may be trespassers has been frequently held by this Court. *Ford v. Blythe Bros.*, 242 N.C. 347, 87 S.E. 2d 879; *Briscoe v. Lighting & Power Co.*, 148 N.C. 396, 62 S.E. 600. The law does not require a railway company to guard every approach to its tracks and trains, and to make its premises child-proof. "Actionable negligence exists only when the one whose act causes the injury owes to the injured party a duty, created either by contract or operation of law, which he has failed to discharge. The inducement to enter must be equivalent to an invitation." *Briscoe v. Lighting & Power Co.*, supra.

In many of the cases cited by the plaintiff, the injury resulted from hidden dangers. In *Ford v. Blythe Bros.*, supra, a pit of live coals under a cover of ashes was left unguarded where small children were known to play. In *Greer v. Lumber Co.*, 161 N.C. 144, 76 S.E. 725, injury resulted to a 10-year-old child riding on the tailboard of a locomotive. However, the engineer knew of its presence and permitted it to ride in a place of danger. In *Vest v. C. & O. R. R. Co.*, 187 S.E. 358, the Supreme Court of West Virginia said: ". . . the long practice of boarding the train with the tacit approval of the practice by the conductor and brakeman imposed on the defendant a duty to anticipate a continuation of the practice and to make reasonable efforts to discourage it." These and other cases cited by the plaintiff do not strengthen his position.

A railway track and a moving train are interesting to boys; so is an apple tree full of ripe fruit. But there is a distinction between a temptation on the part of a trespasser to enter upon another's property and

an invitation on the part of the owner for him to do so. A farmer cannot guard his orchard at all times. A railroad cannot guard its tracks at all times.

The case of *Andrews v. Railway Co.*, 200 N.C. 483, 157 S.E. 431, in its legal aspects is strikingly similar to the case here. The plaintiff, a minor, caught a moving freight car in the City of Raleigh and, while holding to the ladder, was injured by one of the supports as the car passed under a bridge. The complaint alleged that boys from a nearby playground were accustomed to board and ride freight cars; that the custom was known to the defendant; and that the defendant was willfully and wantonly negligent in permitting the practice to continue; that the injury was proximately caused by such negligence in a number of specified respects. The Superior Court sustained the demurrer and this Court affirmed the judgment in a *per curiam* opinion, stating: "We are of the opinion that the complaint does not set forth the breach of any duty the defendant owed to the plaintiff. *Bailey v. R. R.*, 149 N.C. 169, 62 S.E. 912; *Monroe v. R. R.*, 151 N.C. 374, 66 S.E. 315; *Brigman v. Construction Co.*, 192 N.C. 791, 136 S.E. 125."

The plaintiff argues that on the particular facts in this case he is entitled to go to the jury upon the theory that an employee of the defendant was actually present at the crossing and by the exercise of due care could and should have prevented the plaintiff's intestate from attempting to board the train; and that his failure to do so was negligence on the part of the defendant.

At the time the plaintiff's intestate suddenly "lunged" at the train in his attempt to board it, four of his companions were on the opposite side of Ennis Street. They were also near the track—the four boys on the east side and the plaintiff's intestate on the west side of Ennis Street. The Jessup boy attempted to catch the rear of the car next to the last or the front of the last car. At the time, the member of the crew prepared to and did catch the rear end of the last car to take his place as a member of the crew. No doubt at the last moment he was watching the rear of the car preparatory to catching the ladder.

We cannot accept plaintiff's contention it was the duty of the defendant to guard its trains in such manner as to prevent children from attempting to ride its freight cars; but if the contention be accepted, the plaintiff's case must fail in this instance because his own evidence shows a member of the crew was actually present at the crossing and that plaintiff's intestate suddenly lunged at the train in such manner and with such speed that the employee had no opportunity to prevent the injury. Just prior to the unsuccessful attempt which resulted in his death, the boy was in a place of safety where he had a lawful right to be; that is, in Ennis Street. There was nothing to warn the watch-

man that he would suddenly become a trespasser and attempt to board the train. No breach of legal duty on the part of the defendant is shown by the evidence in this record. *Jones v. R. R.,* 199 N.C. 1, 153 S.E. 637; *Vassor v. R. R.,* 142 N.C. 68, 54 S.E. 849; *Murray v. R. R.,* 93 N.C. 92; N. C. L. Rev., Vol. 26, p. 227 (the authorities from many jurisdictions are cited).

In *Harris v. R. R.,* 220 N.C. 698, 18 S.E. 2d 204, it is said: "To the irrepressible spirit of curiosity and intermeddling of the average boy, there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity, he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves. *Twist v. Winona & St. P. R. Co.,* 39 Minn. 164, 12 Am. St. Rep. 626, 39 N.W. 402."

The judgment of the Superior Court of Guilford County is

Affirmed.

PARKER, J., dissents. _____