HENRY B. HOOD v. QUEEN CITY COACH COMPANY, A CORPORATION, AND ASHEVILLE UNION BUS STATION, INC., A CORPORATION.

(Filed 25 February, 1959.)

**1. Negligence § 19b (1)—**

Plaintiff is entitled to have the issue of negligence submitted to the jury if plaintiff's evidence and legitimate inferences therefrom tend to show that defendant breached a legal duty which it owed plaintiff and that such breach of duty, or failure to perform, proximately caused plaintiff's injury.

**2. Negligence § 4f(1)—**

One who enters the premises of another without permission or other right is a trespasser; one who enters with permission but solely for his own purposes is a licensee; one who enters by invitation, express or implied, is an invitee.

**3. Negligence § 4f(4)—**

The owner of land owes the duty to trespassers not to injure them wilfully or wantonly.

**4. Negligence § 4f(3)—**

The owner of land owes the duty to licensees not to injure them wilfully or wantonly and also not to increase the danger by affirmative and active negligence in the management of the property.

**5. Negligence § 4f(2)—**

The owner of land owes the duty to invitees to keep his premises in a reasonably safe condition and to give warning of hidden perils or unsafe conditions so far as they can be ascertained by reasonable inspection and supervision.

**6. Negligence § 4f(1)—**

A pedestrian, while walking to the rear of a bus station along the paved portion of the property of a bus company, customarily used by pedestrians and patrons, lying between a paved alley and the bus company's office and shops, and in returning to his car along the same route, in making a trip to the bus station for the purpose of buying a ticket, is an invitee.

**7. Same—Evidence held sufficient to be submitted to jury on issue of negligence and not to disclose contributory negligence as matter of law on part of invitee.**

Evidence that a bus company, on a paved portion of its property between a public alley and its offices and shops at the rear of a bus station, maintained an excavation in the steep grade in order to provide a level entrance to its office, that the excavation was three feet below the driveway at one end, with concrete sidewalls a few inches above the level of the driveway, and that it failed to maintain guardrails at the excavation as required by municipal ordinance, and that an invitee, in returning to the street from the rear of the bus station at nighttime, in avoiding a backing bus, fell into the excavation to his serious injury, and that the lights from the street and the rear of the bus station, etc., illuminated the surface of the driveway but not the excavation, *is held* sufficient to be submitted to the jury on the issue of the bus company's negligence and not to disclose contributory negligence as a matter of law on the part of the invitee.

**8. Negligence § 19c—**

The burden of proving contributory negligence is on defendant, and nonsuit on the ground of contributory negligence is proper only when no other inference is reasonably deducible from plaintiff's evidence.

**9. Appeal and Error § 42—**

  An assignment of error to the statement of contentions cannot be sus-
tained when no objection was lodged at the time and no request made
for correction.

**10. Negligence § 20—**

  Where photographs of the scene are admitted as substantive evidence
without objection, and such photographs tend to show that the wall
around a depression on defendant's property had been shattered at both
ends and iron upright pipes broken off, and there is further evidence
that a municipal ordinance required a railing or fence around depres-
sions, there is sufficient evidence of a change of condition in the premises
to support an instruction on this aspect of the case.

Appeal by defendant Queen City Coach Company from *Patton, J.,*
October-November, 1958 Term, Buncombe Superior Court.

Civil action against the appellant and Asheville Union Bus Station,
Inc., to recover damages for personal injuries alleged to have been
caused by the actionable negligence of the defendants by reason of
the dangerous and unsafe manner in which they maintained the
premises on and adjacent to the Union Bus Station.

The defendants, by answer, denied negligence and pleaded con-
tributory negligence as a defense.

The plaintiff offered evidence tending to show that his injury oc-
curred about 8:30 p. m. on December 20, 1955, near the Union Bus
Station in the City of Asheville. The station is located on the east
side of Coxe Avenue (a north and south street). The front entrance
to the waiting rooms and ticket counters is from the avenue; however,
there is at least one double-door entrance at the rear. The area im-
mediately to the north and to the west (rear) of the station is paved,
and used as loading ramps for the buses.

Interurban Place (an east and west street) and Coxe Avenue inter-
sect about 90 feet south of the station. Between the station and the
intersection is a vacant space (three lots) fronting on the avenue
and extending backward to a depth of about 100 feet. This vacant
space has Interurban (street) as its southern boundary. Along its
rear, or western boundary, is a public alley from Interurban to the
surfaced area in the rear of the bus station. Bordering the alley on
the west and extending northward to the rear of the bus station is
a wedge-shaped vacant lot, No 7, owned by the defendant. The en-
tire surface of Lot No. 7 is paved. It is about 38 feet wide on Inter-
urban and about 10 or 12 feet wide at the narrow, or north end near
the station. Paved Lot No. 7, the paved alley, and the paved area
in the rear of the bus station merge into each other. They form a

driveway 75 to 100 feet long over which the buses travel between Interurban and the loading ramps at the rear of the station.

The plaintiff's evidence tended to show the public, and especially pedestrians, had been accustomed to use this driveway for the purpose of entering and leaving the rear entrance to the bus station, and for some considerable period of time prior to the plaintiff's injury he had knowledge of this custom, though he had not previously entered the station by this route.

In addition to Lot No 7, the appellant owned a large brick building in which it maintained its offices and repair shops. This building fronted on Interurban and covered (among others) all of Lot No. 6 which adjoined No. 7 on the west. From Interurban there is considerable elevation or upgrade to the station. A narrow excavation out of Lot No. 7 had been made along the east wall of appellant's office building extending from Interurban to a point just beyond the office door. This narrow excavated area was used as a level walk from Interurban to the office. Retaining walls of concrete enclosed the east side and north end of this walk. By reason of the upgrade toward the station, the walk at the north end was about three feet below the surface of the driveway. The concrete sidewall of the walk was a few inches above the level of the driveway and "looked like a street curb" according to plaintiff's testimony.

The plaintiff testified that he found a parking place for his automobile on the north side of Interurban just west of the entrance to the driveway. He walked over this driveway to the station, entered from the rear, purchased, for later use, a round-trip ticket to Charlotte over appellant's lines. Returning to his automobile over the same route, when he was opposite the appellant's office door, a bus started up behind him, and in order to be out of its way, he took one or two steps to his right; and thinking the concrete curb around the walk was the curb to the street, he stepped on it and fell into the pit, sustaining serious and permanent injuries. He further testified the lights from Interurban, from the rear of the bus station, and from other buildings illuminated the surface of the driveway, but did not illuminate the pit which was below the driveway surface. There was no guardrail or other warning device, or notice indicating danger. Over a long period of time he had seen pedestrians use the driveway to the station in the same manner he attempted to use it. There were no signs, warning devices, or notices of any kind that its use by pedestrians was other than safe and approved by the owner. There was a "no admittance" sign at the entrance door to the repair shop, but under it appeared, "apply at office," with an arrow pointing along the driveway

to the office door where the injury occurred. However, the plaintiff admitted on cross-examination that the office door was closed and his only business on the premises was to purchase his ticket and return to his automobile.

The plaintiff introduced in evidence a contract between the appellant and other bus lines on the one hand, and the Asheville Union Bus Station on the other, to the effect that the latter would furnish all necessary terminal facilities. This contract was duly approved by the North Carolina Utilities Commission and was in force at the time of plaintiff's injury. The plaintiff also introduced two ordinances of the City of Asheville, as follows:

> "SECTION 517. RAILINGS PROVIDED. The owner of every lot, piece or parcel of ground within the City of Asheville that is more than 18 inches above or below any street, lane, alley or public footway of said City, and bordering thereon, shall forthwith erect and at all times maintain along the edge of such lot, piece or parcel of ground next to said street, lane, alley, or footway, a secure railing or fence sufficiently high and strong enough to keep persons or animals from falling from such lot, piece or parcel of ground into said street, lane, alley or footway, or from said street, lane, alley or footway into such lot; and any person violating any of the provisions of this section shall be subject to a penalty of $50.00 for each and every such offense.
>
> "SECTION 518. EXCAVATIONS MUST BE PROTECTED BY RAILINGS. No owner, occupant or tenant in possession of any lot, piece or parcel of ground within the City of Asheville shall have, make or maintain on such lot, piece or parcel of ground, any well, hole or other excavation more than three feet deep, unless the same is securely enclosed by railings or otherwise to keep persons or animals from falling into the same; and any person violating any of the provisions of this section shall be subject to a penalty of $25.00 for each and every such offense."

The plaintiff introduced a number of enlarged photographs and a scale map of the area involved. All were introduced generally and without any limitation or request for limitation as to their use. These exhibits were sent up and are a part of the case on appeal. Their content will be referred to in the opinion.

At the close of the evidence the defendants made motions for involuntary nonsuit. Judgment of nonsuit was entered as to Asheville Union Bus Station, from which there was no appeal. The appellant, after resting without offering evidence, moved for judgment of non-

suit and excepted to the court's refusal to allow it. Issues of negligence, contributory negligence, and damages were submitted to the jury and all were answered in favor of the plaintiff. From the judgment on the verdict, the defendant Coach Company appealed.

*Harkins, Van Winkle, Walton & Buck, By: Herbert L. Hyde, for plaintiff, appellee.*
*J. Y. Jordan, Jr., John F. Ray, Coble & Behrends, By: Samuel Behrends, Jr., for defendant, appellant.*

HIGGINS, J.  Appellant's assignments of error present these questions of law: (1) Is the evidence sufficient to support the issue of negligence? (2) Does contributory negligence appear from the evidence as a matter of law? (3) Does reversible error appear in the challenged portions of the court's charge?

The plaintiff was entitled to have the issue of negligence submitted to the jury if his evidence and the legitimate inferences from it tended to show the defendant breached a legal duty which it owed to him, and that the breach of, or failure to perform, that duty proximately caused his injury. *McFalls v. Smith,* 249 N.C. 123, 105 S.E. 2d 297; *Taylor v. Brake,* 245 N.C. 553, 96 S.E. 2d 686; *Williamson v. Clay,* 243 N.C. 337, 90 S.E. 2d 727; *Ward v. Smith,* 223 N.C. 141, 25 S.E. 2d 463.

The plaintiff contended he was an invitee on the appellant's premises for the purpose of purchasing transportation over its lines; that his mission was for the mutual benefit of the appellant and himself; that the appellant was under the legal duty (1) to maintain its premises in a reasonably safe condition for the invited use, and (2) to give warning of hidden dangers; that the defendant breached that duty and thereby caused plaintiff's injury.

On the other hand, the defendant contended that at the time of the plaintiff's injury he was a trespasser, or, if not a trespasser, was on its premises as a licensee; that by entering the premises for his own purposes he assumed all risk incident to the condition of the premises at the time, and that the defendant could be held liable only for wilful and wanton injury, and that the evidence fails to disclose such injury.

The court charged fully as to the owner's liability for injury resulting from the condition of the premises according as the jury might find the plaintiff to have been a trespasser, a licensee, or an invitee. The charge was in accordance with the rules laid down in *Thompson v. DeVonde,* 235 N.C. 520, 70 S.E. 2d 424; *Coston v. Hotel,* 231 N.C. 546, 57 S.E. 2d 793; *Pafford v. Construction Co.,* 217 N.C. 730, 9 S.E.

2d 408; *Lowe v. Gastonia,* 211 N.C. 564, 191 S.E. 7; *Brigman v. Construction Co.,* 192 N.C. 791, 136 S.E. 125; *Ellington v. Ricks,* 179 N.C. 686, 102 S.E. 510; *Fortune v. R.R.,* 150 N.C. 695, 64 S.E. 759.

As affecting liability for injury resulting from the condition of premises in private ownership or occupancy, one who enters without permission or other right is a trespasser. One who enters with permission but solely for his own purposes is a licensee. One who enters by invitation, express or implied, is an invitee. *Thompson v. DeVonde, supra; Pafford v. Construction Co., supra; Porchey v. Kelling* 185 S.W. 2d 820 (Mo.) ; *Lange v. St. Johns Lumber Co.,* 115 Ore. 337, 237 P. 696; *Smith v. Burks,* 305 S.W. 2d 748 (Tenn.) ; *Tahan v. Wagaraw Holding Co.,* 101 A. 2d 38 (N.J.) ; "The duty owed trespassers is that they must not be wilfully or wantonly injured." *Jessup v. R.R.,* 244 N.C. 242, 93 S.E. 2d 84. "As to a licensee the duties of a property owner are substantially the same as with respect to a trespasser. But a vital difference arises out of conditions which impose upon the owner of property the duty of anticipating the presence of a licensee. If the owner, while the licensee is upon the premises exercising due care for his own safety, is affirmatively and actively negligent in the management of his property or business, as a result of which the licensee is subjected to increased danger, the owner will be liable for injuries sustained as a result of such active and affirmative negligence." *Wagoner v. R.R.,* 238 N.C. 162, 77 S.E. 2d 701. "The proprietor of a store is not an insurer of the safety of customers while on the premises. But he does owe to them the duty to exercise ordinary care to keep the premises in a reasonably safe condition and 'to give warning of hidden perils or unsafe conditions in so far as can be ascertained by reasonable inspection and supervision.' " *Ross v. Drug Store,* 225 N.C. 226, 34 S.E. 2d 64.

The evidence disclosed that by contract arrangement approved by the North Carolina Utilities Commission, the Asheville Union Bus Station furnished terminal facilities for the appellant and other bus lines entering the City of Asheville, sold their tickets, accepted, transferred, baggage, mail, freight, etc., and performed the functions for each line which otherwise would have necessitated separate terminals. The evidence was sufficient, therefore, to support a finding it was to the mutual benefit of the parties for the plaintiff to enter the bus station to purchase a ticket to Charlotte over the defendant's line. From the plaintiff's parked automobile the short, direct, and frequently used approach to the bus station was over the paved surface of Lot No. 7 and the public alley which were so merged as to offer a continuous paved route from plaintiff's automobile to the rear doors of the bus

station; that the public, especially pedestrians, had so used this approach for a long period of time; that no notice or warning existed anywhere that the public was not expected to use it or that its use involved any except obvious hazards. Notice on appellant's building, "apply at office," with the arrow pointing along the driveway, tended to indicate its use by those having business was invited. Also, the officials of the company each time they entered the office door were confronted with the conditions tending to show danger. The evidence permitted the finding the plaintiff was an invitee with the legal obligation on the defendant (1) to maintain the premises in a reasonably safe condition for the legitimate use of the invitee, and (2) to provide safeguards against injury by reason of depressed holes, pitfalls, or other hidden dangers. Failure to do either was negligence. *Batts v. Telephone Co.*, 186 N.C. 120, 118 S.E. 893.

The evidence disclosed that lights from the street and from the bus station illuminated the surface of the driveway but did not penetrate into the walk and did not show that danger existed by reason thereof. The defendant permitted the jury to decide the issue of negligence (as well as contributory negligence and damages) on the basis of plaintiff's evidence alone. The evidence was sufficient to support a finding of actionable negligence. *Williamson v. Clay, supra.* The jury having found actionable negligence on the part of the defendant, in order to defeat recovery the burden devolved upon it to show the contributory negligence of the plaintiff. "Nonsuit on the ground of contributory negligence may be allowed when, and only when, no other inference is reasonably deducible from the plaintiff's evidence." *Donlop v. Snyder,* 234 N.C. 627, 68 S.E. 2d 316; *Bemont v. Isenhour,* 249 N.C. 106, 105 S.E. 2d 431; *High v. R.R.,* 248 N.C. 414, 103 S.E. 2d 498; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19. Under the rules laid down in the cases, therefore, we must hold that the evidence of contributory negligence does not appear as a matter of law.

Failing in the effort to have the judgment reversed on the first two grounds assigned, nevertheless the defendant has urgently contended that it is entitled to a new trial for alleged errors in the charge. Some of the assignments relate to the statement of the plaintiff's contentions. No objection was lodged at the time and no request was made for correction. The principles of law were correctly stated and correctly applied to the evidence in the case.

The defendant, however, in the brief and on the oral argument, has contended: "In those portions of the charge the court submitted to the jury the possibility of a changed condition in the premises after long public use. No evidence to support submission of this question

to the jury appears in the record." The court's charge as to changed conditions was evidently taken from the third paragraph of the opinion by *Stacy, J., (later C.J.,)* in the case of *Batts v. Telephone Co., supra.* Unless the record discloses evidence of a change in condition, the charge, perhaps, would be objectionable. However, we think there was evidence in the case tending to show a change of condition. The plaintiff offered and the court admitted in evidence generally, without qualification, four enlarged photographs of the place where the injury occurred. Of course, upon objection the admission of these photographs should, and no doubt would have been restricted and their use limited to the purpose of illustrating the testimony. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916, and cases cited. However, no objection was made to the admission of the photographs and map as substantive evidence. Counsel on both sides were able and painstaking trial lawyers. We may assume that each, for his own reason, was satisfied to have the photographs and map introduced as substantive evidence. The examination and cross-examination with respect to them tend to confirm this view.

These photographs showed the curb or wall around the depression to have been shattered at both ends and iron upright pipes broken off. Parts of these pipes remained imbedded in the concrete. These broken pipes, in view of the city ordinance requiring a railing or fence around depressions, were sufficient to permit the inference that at some time a railing may have been installed and later broken. From the judge's charge it appears that such had been the contention of plaintiff's counsel.

In addition, the record fails to show when the excavating for the walk was done — whether before or after the surfacing of Lot No. 7 out of which it was carved, or whether in fact there had been a protecting rail around the walk. These matters were within the peculiar knowledge of the appellant. Its silence no doubt furnished plaintiff's counsel some basis for the contention there had been at some time a change in condition — a broken and unrepaired rail leaving the pit unprotected. In this view of the evidence, a permissible one we think, the court's charge as to change of condition was permissible, if not required.

In the judgment of the Superior Court of Buncombe County, we find No Error.