ROBERT MAZZACCO v. HARVEY PURCELL AND ROSEMARY PURCELL

No. 128

(Filed 8 July 1981)

1. Negligence § 52.1— relative cutting trees—invitee

Plaintiff, who sustained injuries during a tree cutting accident on his brother-in-law's property, was an invitee of defendants where he was on their property by express invitation; he entered the rental property of defendants to cut trees; and this service was of direct and substantial benefit to defendants in maintaining and improving their rental property.

2. Negligence § 57.10— tree cutting accident—negligence and contributory negligence as jury questions

In an action to recover for injuries sustained by plaintiff in a tree cutting accident, the trial court erred in directing verdict for defendants on the ground that the evidence failed to establish actionable negligence on the part of defendants and, in the alternative, that the evidence showed contributory negligence as a matter of law, since defendants owed plaintiff, as an invitee, a duty of ordinary care to maintain their premises in a safe condition and to warn of hidden dangers that had been or could have been discovered by reasonable inspection; the evidence raised a question for the jury as to whether the male defendant negligently failed to warn plaintiff of the hidden danger in the rigging of a rope to a tree which was being felled; a question was raised for the jury as to whether plaintiff knew or should have known that a rope, a part of which was slack and lying on the ground, was tied to a third tree in such a manner that his body would be catapulted skyward when the falling section took up the slack; and a jury question was raised as to whether plaintiff was experienced in cutting trees, whether the attachment of the rope to a third tree was visible, and whether plaintiff's actions were reasonable and prudent under the circumstances or whether his actions constituted contributory negligence.

PLAINTIFF appeals from decision of the Court of Appeals, 51 N.C. App. 42, 275 S.E. 2d 190 (1981), affirming a directed verdict in favor of defendants entered by *Davis, J.,* on 24 January 1980 in FORSYTH Superior Court.

This is a civil action to recover damages for personal injuries received when plaintiff was allegedly thrown through the air "like

an arrow shot from a bow." Plaintiff alleged that, at the time of the injury, he was an invitee of defendants who failed to warn him of a dangerous condition on their property which was the proximate cause of his injuries.

Defendants answered denying that they created a dangerous condition on their land or that they were negligent in any way. Defendants contend plaintiff's injuries were the result of unforeseeable and unavoidable accident or, in the alternative, the injuries were the result of plaintiff's own contributory negligence.

The action came on for trial at which time plaintiff presented evidence which tended to show the following:

In 1977 plaintiff was a resident of Bricktown, New Jersey where he was employed as a boiler plant supervisor. For three or four years, he had also worked on a part-time basis with two of his wife's brothers in their business of removing and pruning trees. Defendants, who live in Pfafftown, North Carolina, are the brother-in-law and sister of plaintiff.

In June 1977, plaintiff's sister telephoned him that she and her husband had purchased a rental house within walking distance of their home in Forsyth County and needed to remove some trees. She invited plaintiff to visit and bring his tree removal equipment and, while there, help her and her husband remove the trees. Plaintiff agreed. He, his wife, and two daughters came to North Carolina, arriving at defendant's home on a Friday or Saturday. He brought with him a rope, a climbing saddle and a chain saw. The purpose of the trip was more of a vacation, but he was going to help cut trees while there.

Plaintiff discussed with defendants the removal of trees which were blocking sunlight from the house and causing a mildew problem. Plaintiff and his sister began removing trees on Monday morning and continued through the week. On the following Saturday, 2 July 1977, plaintiff went to the property with his brother-in-law and Wade Purcell, a son of defendants, to remove the larger trees which plaintiff and his sister could not remove. They took down two large pine trees without incident. They then turned their attention to a large live oak tree leaning over the roof of the house causing an actual danger to the structure. The tree towered upwards sixty to eighty feet. Using a ladder,

Mazzacco v. Purcell

the three men went onto the roof of the house. Plaintiff then climbed a ladder into the tree and proceeded to cut away branches which he lowered by rope to his nephew and brother-in-law on the roof of the house who in turn threw the limbs to the ground. This continued until noon when only one large branch and several small branches remained. While removing the large branch, plaintiff cut three of his fingers and his sister took him to the hospital emergency room. He received five stitches in one finger which was immobilized in a splint. The three fingers were then bandaged. The treatment took three to four hours. His sister then returned him to the rental property. Plaintiff did not know defendant and his sons would·continue to work in his absence. Plaintiff's brother-in-law did not expect him back at this particular time.

When plaintiff came around the corner of the rental house, he saw his brother-in-law and John Purcell, another of defendants' children, on the ground pulling on a rope tied to the upper portion of the tree on which they had been working when plaintiff cut his hand. He then heard the sound of a chain saw. He looked up and saw his nephew, Wade Purcell, on a ladder which ran from the roof of the house to a branch on the tree. One end of the rope had been rigged by defendant and his son to the top section of the tree being sawed off, then the rope passed over a nearby limb on a second tree and, unknown to plaintiff, the other end of the rope had been tied to the trunk of a third tree at ground level. By pulling on the rope they could make the severed section of the tree topple away from the house. The nephew was under the lean of the tree with the chain saw making a cut toward a notch. It appeared to plaintiff that the cut might miss the notch. This would create a situation where control of the direction of the fall of the tree section would be lost. The section being removed was fifteen to twenty feet in length, twelve to fifteen inches in diameter and weighed 1500 to 2000 pounds.

Plaintiff went to where his brother-in-law and John Purcell were pulling on the rope, a very strong 120-foot climbing rope brought by plaintiff from New Jersey. One of the two asked plaintiff, "Well how are you going to pull with one hand?" The bandage on his left hand made it difficult for plaintiff to grip. Plaintiff demonstrated how he could pass the rope behind him and hold it with one hand against his hip. Plaintiff laid the rope across

his left palm and below the beltline on his hips and pulled with his right hand and hips by leaning and pushing backwards. The Purcells were situated on the left side of the rope "pulling back" with their hands while plaintiff was on the right side of the rope "pushing back" with his hips. No one told plaintiff not to get on that side of the rope. There was no further conversation between the parties except plaintiff stated he had received a couple of stitches and was all right. Plaintiff's sister and wife sought to assist with the pulling but were told to go back.

Within two minutes, the top section of the tree was sawed off but the rope was too short to permit the severed portion to reach the ground. As it started to fall, plaintiff's brother-in-law yelled "turn it loose" or "let go." When the rope snapped taut by the weight of the falling tree section, plaintiff was "catapulted" through the air thirty or forty feet into a large pine tree, striking it with his right shoulder. He did not remember flying through the air or whether he let go of the rope. He received injuries consisting of a complete left acromioclavicular dislocation, bruises to the back and rope burn under the left arm. He lost approximately ten weeks of work and had corrective surgery performed in New Jersey.

Plaintiff was not aware when he went to pull on the rope that the other end of it was tied to a third tree at ground level. He did observe a slack portion of the rope lying on the ground behind him when he took the rope in his left hand and ran it behind his back. He did not know whether the end of the rope was covered by foliage or brush.

When plaintiff returned to North Carolina in late July 1977 for a family wedding, he returned to the scene of the accident. His brother-in-law told him it looked like plaintiff was flying through the air forty or fifty miles an hour when he was catapulted by the rope. He further told plaintiff he knew the rope was too short to allow the tree section to fall clear to the ground and he was amazed the rope did not break when the tree section fell. He had thought it might break the rope and he would have to buy plaintiff a new one. The defendant Harvey Purcell told plaintiff that he and his son, who was pulling on the rope with him, had agreed that as soon as they saw the tree starting to lean in the direction of the notch they would both let go.

At the close of plaintiff's evidence, the trial court allowed defendants' motion for a directed verdict upon the grounds that (1) the evidence failed to establish actionable negligence on the part of the defendants and, in the alternative, (2) the evidence showed contributory negligence as a matter of law. Plaintiff appealed to the Court of Appeals, and that court, with Clark, J., dissenting, affirmed the trial court. Plaintiff appealed to this Court as of right pursuant to G.S. 7A-30(2).

*Craighill, Rendleman, Clarkson, Ingle & Blythe, P.A., by John R. Ingle, attorneys for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and James M. Stanley, Jr., attorneys for defendant appellees.*

HUSKINS, Justice.

The determinative question on this appeal is whether the Court of Appeals erred in upholding directed verdict for defendants. This requires two decisions: first, whether defendants were negligent in any respect whatsoever; and second, whether plaintiff was contributorily negligent as a matter of law so as to bar any claim for relief.

Taking the evidence in a light most favorable to plaintiff and giving plaintiff the benefit of every reasonable inference to be drawn therefrom, we conclude it was error to grant directed verdict for the male defendant Harvey Purcell. However, a directed verdict in favor of the female defendant Rosemary Purcell was properly granted.

The standard of care owed to plaintiff depends upon whether plaintiff was a licensee or invitee. The distinction between an invitee and a licensee is determined by the nature of the business bringing a person to the premises. A licensee is one who enters on the premises with the possessor's permission, express or implied, *solely for his own purposes* rather than the possessor's benefit. An invitee is a person who goes upon the premises in response to an express or implied invitation by the landowner for the mutual benefit of the landowner and himself. *Rappaport v. Days Inn,* 296 N.C. 382, 250 S.E. 2d 245 (1979); *Hood v. Coach Co.,* 249 N.C. 534, 107 S.E. 2d 154 (1959).

[1]   Plaintiff in this case was an invitee of defendants. He was there by express invitation. He entered the rental property of defendants to cut trees. This service was of direct and substantial benefit to defendants in maintaining and improving their rental property. *Contrast Thompson v. De Vonde,* 235 N.C. 520, 70 S.E. 2d 424 (1952), *with Murrell v. Handley,* 245 N.C. 559, 96 S.E. 2d 717 (1957).

[2]   Defendants owed plaintiff as an invitee a duty of ordinary care to maintain the premises in a safe condition and to warn of hidden dangers that had been or could have been discovered by reasonable inspection. *Husketh v. Convenient Systems,* 295 N.C. 459, 245 S.E. 2d 507 (1978). Plaintiff contends defendants were negligent in failing to warn him of the hidden danger created by attaching one end of the rope to the tree section being felled, then passing the rope over a high limb on a second tree and tying the other end to the trunk of a third tree, knowing the rope, thus arranged, was too short to allow the severed portion of the tree to fall all the way to the ground. We agree that the jury could find the male defendant negligently failed to warn plaintiff of the hidden danger in the rigging of the rope. We find no such breach of duty on the part of the female defendant.

Plaintiff has made no showing that Rosemary Purcell was aware of the dangerous condition on her property. She was with plaintiff at the hospital when the dangerous condition was created. There is no evidence that she was aware, or should have been aware upon reasonable inspection, of the danger.

The jury could find that the male defendant should have warned plaintiff of the hidden peril or unsafe condition in the rigging of the rope. Since defendant changed the condition of the premises while plaintiff was at the hospital, a jury could reasonably conclude that this change created a dangerous condition on the property of which defendant failed to warn plaintiff upon his return from the hospital. The jury could further find that plaintiff did not know the rope, a part of which was slack and lying on the ground, was tied to a third tree in such a manner that his body would be catapulted skyward when the falling section took up the slack.

Defendants argue this condition was obvious and that there was no duty on the part of the owner to warn of such an obvious

Mazzacco v. Purcell

condition. *See Long v. Methodist Home*, 281 N.C. 137, 187 S.E. 2d 718 (1972); *Jones v. Pinehurst, Inc.*, 261 N.C. 575, 135 S.E. 2d 580 (1964). However, we cannot say that the condition was equally obvious to the male defendant and plaintiff. Plaintiff's testimony is that he was not aware of the condition at the time and indeed was not made aware of it until almost a month later when the male defendant explained to him how the rope was rigged and that defendant was aware the rope was too short to let the tree section fall to the ground and thought the rope would probably break. The jury could further find that plaintiff was not made aware of the understanding between Harvey Purcell and his son to let go of the rope once the severed tree started leaning in the proper direction.

Finally, it is for the jury to weigh the evidence and find as facts whether plaintiff was experienced in cutting trees and whether the attachment of the rope to a third tree was visible and determine whether plaintiff's actions were reasonable and prudent under the circumstances or whether his actions constitute contributory negligence. The evidence offered does not establish contributory negligence as a matter of law. While permitting an inference that plaintiff was negligent, the evidence does not conclusively establish it.

For the reasons stated, the decision of the Court of Appeals affirming directed verdict in favor of Harvey Purcell is reversed. The case against Harvey Purcell is remanded to that court for further remand to Forsyth Superior Court for further proceedings consistent with this opinion. The decision of the Court of Appeals affirming directed verdict in favor of Rosemary Purcell is affirmed.

As to Rosemary Purcell—Affirmed.

As to Harvey Purcell—Reversed and Remanded.