L. M. BRAME v. S. W. CLARK.

(Filed 30 September, 1908.)

1. Trespass—Presumptions—Damages—Pleadings—Allegations Sufficient.

From every action of trespass the law infers some damages, and an allegation that defendant did unlawfully, forcibly, etc., enter upon certain lands in plaintiff's possession and occupation is sufficient to sustain the action.

2. Trespass—Pleadings—Husband and Wife—Attempted Seduction—Damages, Aggravation of.

Under an allegation of trespass, in a suit by the husband, coupled with averments that it was with the "unlawful, malicious, lascivious," etc., intent and purpose to seduce, debauch and carnally know the plaintiff's wife, and that defendant did then attempt to seduce and carnally know her, the jury may award exemplary damages to the husband, under pertinent evidence, in aggravation of the actual damages caused by the mere act of trespass.

3. Trespass—Husband and Wife—Seduction Attempted—Damages, Right of Husband to Recover—Constitutional Law.

The statutory and constitutional enlargement of the property rights of the wife does not affect the rights of the husband, in an action of trespass upon his home, upon the wife's land, with the intent and attempt to seduce or carnally know her.

ACTION heard on demurrer to complaint by *Lyon, J.,* February Term, 1908, of VANCE.

The plaintiff filed his complaint in the following words, to-wit: "(1) That on or about 25 April, 1907, the defendant, near the village of Dabney, at and in the county of Vance and State of North Carolina, and near the public road lead-

ing from Dabney to Dexter, did unlawfully and forcibly, wickedly and maliciously enter upon a certain lot or parcel of land, then in the possession and occupancy as a residence of plaintiff, with the unlawful, malicious, lascivious and wicked intent and purpose to seduce, debauch and carnally know one Lovetta Brame, the wife of plaintiff, and did then and there wickedly, maliciously, unlawfully, wrongfully and willfully insult and attempt to seduce and carnally know the said Lovetta Brame, plaintiff's said wife, to plaintiff's great damage, $2,000."

Defendant demurred, for that "(1) No special damage or injury or actionable wrong to plaintiff is alleged, the wife not being a party and the complaint not showing that plaintiff has suffered any special damages or any damage. (2) The complaint does not set forth any facts sufficiently definite and specific to constitute a cause of action, in not setting out the acts and things complained of in such manner as that it may be seen that, if true, they constitute an actionable wrong. (3) An attempt to seduce is not actionable, no seduction or injury being alleged."

His Honor overruled the demurrer and allowed defendant sixty days to answer. Defendant excepted and appealed.

*A. C. Zollicoffer* and *Thomas M. Pittman* for plaintiff.
*T. T. Hicks* for defendant.

CONNOR, J. There can be no doubt that the plaintiff has alleged an actionable wrong—a trespass upon his possession of real estate. It is elementary that "Every unauthorized and therefore unlawful entry into the close of another is a trespass. From every such entry against the will of the possessor the law infers some damage; if nothing more, the treading down the grass or the herbage." *Ruffin, C. J.,* in *Dougherty v. Stepp,* 18 N. C., 371. His Honor's judgment was clearly correct.

.Both parties, however, discussed, although from different points of view, the question of damage, which, upon the admissions made by the demurrer, plaintiff was entitled to recover. The defendant argued the case upon the theory that two causes of action are stated—one for trespass on realty, the other for injury, etc., inflicted upon the wife. His learned counsel strongly contends that the conduct of the defendant was not an actionable wrong to the plaintiff. However this may be, and without intimating any opinion upon it, we do not so construe the complaint. The plaintiff alleges a malicious, unlawful and forcible trespass, setting out that it was made with the malicious intent to, and that he did in truth then and there willfully, wickedly, maliciously, etc., insult and attempt to seduce and carnally know plaintiff's wife. This matter is stated as the foundation for a claim of actual and vindictive damages, the cause of action being the trespass. We are asked to pass upon the question whether in the assessment of damages these matters may be considered by the jury in aggravation. In *Duncan v. Stalcup,* 18 N. C., 440, *Daniel, J.,* says: "In looking into the books we find the rule in this action to be that the jury are not restricted in their assessment of damages to the amount of the mere pecuniary loss sustained by the plaintiff, but may award damages in respect to the malicious conduct of the defendant and the degree of insult with which the trespass was committed. The plaintiff is at liberty to give in evidence the circumstances which accompany and give character to the trespass." In this case vindictive damages were awarded. In *Day v. Woodworth,* 54 U. S., 363, *Grier, J.,* said: "In actions of trespass, when the injury has been wanton and malicious or gross and outrageous, courts permit juries to add to the measured compensation of the plaintiff, which he would have been entitled to recover had the injury been inflicted without design or intention, something further, by way of punishment or example, which has sometimes been called 'smart money.' " This was an action *quare clausum fregit.*

In *Mitchell v. Billingsley,* 17 Ala., 396, it was shown that defendants, in the commission of the trespass, used indecorous and insulting language, and that one of the defendants had a pistol. Exemplary and punitive damages were awarded. In *Merest v. Harvey,* 5 Yount, 442, *Heath, J.,* says: "I remember a case where a jury gave £500 damages for merely knocking a man's hat off, and the court refused a new trial. * * * It goes to prevent the practice of dueling, if juries are permitted to punish insult by exemplary damages." *Gibbs, C. J.,* said: "I wish to know, in a case where a man disregards every principle which actuates the conduct of a gentleman, what is to restrain him except large damages. * * * I do not know upon what principle we can grant a rule in this case, unless we were to lay it down that the jury are not justified in giving more than the absolute pecuniary damage that the plaintiff may sustain." In this case, for a trespass, £500 was given. In discussing the question whether for injuries sustained by a plaintiff in respect to his marital rights his action was for trespass or case, Mr. Street says: "Clearly, we are here confronted with a class of wrongs which, historically, have their roots in the law of trespass, but which, nevertheless, in maturity, lie altogether beyond the field of trespass and belong to that body of legal injuries in which harm is conceived as being done, not to persons or property, but to rights incident to him." Foundations Legal Liability, 264. It is suggested that, while it is true that exemplary damages may be recovered for malicious trespass upon property and for insulting language to the owner, the wife alone can sue for damages sustained by her on account of indecent and insulting language and conduct. For the purpose of supporting this view, the recent changes made by the Constitution and statutes in respect to the property and personal rights of married women are relied upon. We cannot think that, because the property rights of the wife have been enlarged and her right to sue alone for injuries to her person and property conferred, the right and duty of the husband to be the head

of the family, to protect the honor and virtue of his wife, to recover for injuries sustained by interference with his maritial rights, have been destroyed.

It is true that, as held by this Court, while he may be reduced to a mere steward or overseer of his wife's property, he is no less her husband, with all of the rights and duties incident to that relation. That which degrades or destroys her honor must affect his. It cannot be that, if by permission of the wife he is living on her land as his home, the law will not afford him protection against and damage for a malicious wrong done to him through his wife. The law would but mock him, if, when his home is invaded, his wife insulted and her virtue assaulted, it gave him for such injuries but a penny, permitting the offender to go "Scot free." If in the bitterness of his wounded spirit he sought redress by violation of the criminal law, subjecting himself to infamous punishment, the sympathy of his fellow men would be but little comfort to him. No man can long retain the respect of his wife and children if he does not seek redress for a malicious trespass upon his home and for an attempt to seduce his wife. The ancient law declared, "A patriarch is lord in his own house and family, and no person has a right to interfere with him—not even the village elder or the imperial judge." Again, it is said: "The house father was responsible for the due performance of his *sacre* and for the purity of his ritual." States grow in virtue and strength; citizens are loyal and home-loving in proportion as the unity of the family is preserved; the husband and father is recognized as the head of the family, the wife living under his protection and looking to him to guard her person and honor from all harm. The husband must have redress for wrongs done him by seeking the award of such actual and exemplary damages as a jury may find to be proper, rather than by violating the criminal law.

The judgment of his Honor was correct and must be

Affirmed.