BARRY EUGENE BLEVINS, PLAINTIFF v. FREDERICK MITCHELL TAYLOR, THOMAS SEUBERLING, SOUTHEASTERN HISTORICAL RE-ENACTMENT SOCIETY, INC., BROWN LOFLIN, AND HANDY DANDY RAILROAD, INC., DEFENDANTS

No. 9022SC585

(Filed 2 July 1991)

**Negligence § 53.6 (NCI3d) — historical re-enactment — loaded weapon — liability of sponsor**

> Summary judgment was correctly entered for the sponsor of a civil war re-enactment in a negligence action brought by a participant who received shotgun injuries during the battle. Defendant Loflin had only the ordinary duties owed by owners and occupiers of land to business invitees. The undisputed facts in the record will not permit the inference that defendant Loflin had knowledge of a substantial danger or sufficient information to foresee injury to an invitee from live ammunition; rather, the testimony supports the view that plaintiff's injury was the result of an unforeseeable and isolated act by a fellow member of the Society. No duty arose in these circumstances to take special precautions for plaintiff's safety.

**Am Jur 2d, Negligence §§ 135, 136, 488.**

APPEAL by plaintiff from order entered 20 March 1990 by *Judge Thomas W. Seay, Jr.,* in DAVIDSON County Superior Court. Heard in the Court of Appeals 5 December 1990.

*Wilson, Biesecker, Tripp & Sink, by Roger S. Tripp, for plaintiff-appellant.*

*Bell, Davis & Pitt, P.A., by Joseph T. Carruthers and Charlot F. Wood, for defendant-appellee.*

BLEVINS v. TAYLOR

[103 N.C. App. 346 (1991)]

PARKER, Judge.

Plaintiff appeals from a summary judgment for defendant Brown Loflin entered pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. Plaintiff, a self-described "hardcore" member of the Southeastern Historical Re-Enactment Society (Society), brought a negligence suit against a number of defendants for shotgun injuries sustained in connection with a mock Civil War battle during the Southeast Old Thresher's Reunion, a festival held in Davidson County over the Fourth of July Holiday. The defendants included the Society, the owner of the shotgun, the user of the shotgun and Loflin. Loflin, who sponsored the public event featuring the military re-enactment involved in this case, leased the land on which the staged battle took place. We affirm the trial court's judgment in that (i) no material facts are in dispute; (ii) defendant breached no legal duty owed to plaintiff; and (iii) defendant was, therefore, entitled to summary judgment as a matter of law.

We begin with the salient facts before the trial court on the motion for summary judgment. The following paragraphs in the Society's own "Safety Regulations," in effect at the time of plaintiff's accidental injury, are relevant to the activities in which the Society was engaged on Loflin's land.

1) All Safety Regulations will be *strictly* enforced by the Staff. Any violation of standard firearm safety or common sense in regard to firearm safety shall be cause for an individual to be expelled from the field and the remainder of activities.

2) The Commander and his Sergeants shall be responsible for the inspection of the unit prior to events and immediately following events to ensure conformance with Safety Regulations.

. . . .

5) Only approved weapons may be used and only blank, black-powder cartridges shall be carried. No projectiles, bullets, musket balls, or loading blocks shall be carried at any time.

. . . .

26) ALL firearms must meet ALL these safety requirements or they may not be used at any event.

Over the four-year period just prior to the accident, plaintiff had participated in about four dozen Civil and Revolutionary War re-enactments. The Society had no history of accidental injuries. Plaintiff testified that he knew of no injuries at any previous Society re-enactment. Plaintiff was aware of the Society's regulations concerning weapons and blank ammunition and testified in his deposition that he relied on the Society's safety measures.

The shotgun that allegedly wounded plaintiff in this case had been brought to the battle by a Society member, another defendant in the case. That defendant testified by deposition that he had *no reason to* believe that the gun was loaded in contravention of the Society's rules prohibiting the use of live ammunition or projectiles. When questioned about prior accidents, the owner of the shotgun answered that he had participated in about 150 events over the course of twenty years and that there had never been any injuries before plaintiff's. The alleged weapon was actually fired by yet another Society member, also named as a defendant. His deposition testimony disclosed that he had inspected the shotgun before firing it, discovered that it was loaded and assumed it had been loaded with blank, black-powder cartridges.

Plaintiff testified in detail at his deposition about the Society's established procedures for implementing its safety regulations. The Society's *regular method for* weapons inspection put the responsibility for safety clearance on officers and non-commissioned officers (NCOs) of the Society. In their presence, members would drop a ramrod into the barrel of the gun and listen for a "ping" indicating that the weapon had an empty barrel and/or they would "pop the cap" (fire the musket or shotgun at the ground to check that it was clear). If the weapon would not clear, it was not to be used. The officers and NCOs also inspected the cartridge box of each rifleman. According to plaintiff's deposition testimony, he thought the Society's safety rules and regulations were "good enough" and "there was no reason for [him] to believe that live amunition [sic] would be flying through the air." By his own testimony, plaintiff conceded that there was, therefore, no reason for Loflin to have expected the use of any live ammunition either. Plaintiff also testified that the Society did not follow its safety procedures on the day of his accident, apparently because there was not sufficient time to do so, although some Society members, including plaintiff, had checked their weapons on their own.

**BLEVINS v. TAYLOR**

[103 N.C. App. 346 (1991)]

Loflin's affidavit in support of his motion for summary judgment stated that "it was [his] understanding that the Society had safety rules or precautions it followed before and during each re-enactment which included inspection of firearms." Loflin further indicated that he had agreed to sponsor previous re-enactments with the Society and "[t]here were no problems whatsoever in [those two] previous re-enactments, and I had heard of no problems whatsoever in any previous re-enactments anywhere." Loflin's affidavit attested to Loflin's complete lack of knowledge about any load of live ammunition in the shotgun that allegedly injured plaintiff.

None of these facts is in dispute on appeal. Rather, plaintiff's argument is that, on such facts, Loflin had a non-delegable legal duty, based on the alleged intrinsically dangerous activity of the Society's handling of firearms, (i) to institute his own safety regulations for the protection of the public and Society members, (ii) to insure that the Society complied with its safety rules and regulations and (iii) to inspect the weapons himself. No such duties existed in this case. As we discuss herein, Loflin had only the ordinary duties owed by owners and occupiers of land to business invitees; and he did not breach any of those duties. Therefore, we affirm the summary judgment order in favor of Loflin.

Under the facts in this case, plaintiff was Loflin's invitee rather than a mere licensee. *See, e.g., Hood v. Coach Co.,* 249 N.C. 534, 540-41, 107 S.E.2d 154, 158 (1959). The general rule is that an owner or possessor of land owes an invitee the duty to exercise ordinary care to maintain the premises in a safe condition and to warn of hidden dangers that have been, or could have been, discovered by reasonable inspection. *Mazzacco v. Purcell,* 303 N.C. 493, 498, 279 S.E.2d 583, 587 (1981); *Cantey v. Barnes,* 51 N.C. App. 356, 359, 276 S.E.2d 490, 492 (1981). Where the danger on land is not hidden but arises out of the negligent or intentional act of a third person, the owner or occupier will not be held liable for negligence if he did not know of the danger and it had not existed long enough for him to have discovered it, corrected it or warned against it. *Aaser v. Charlotte,* 265 N.C. 494, 499-500, 144 S.E.2d 610, 615, 14 A.L.R.3d 1008, 1015 (1965); *see also* Restatement (Second) of Torts § 344 comment f (1965) (possessor "under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. . . . If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless

or criminal conduct on the part of third persons, . . . he may be under a duty to take precautions against it.").

Plaintiff argues, however, that this case does not come within these general rules but is more like cases finding a non-delegable duty of the owner of a place of amusement to provide for the reasonable protection of patrons against injuries from "the defective or dangerous condition of the premises or from defective amusement apparatus or devices," *Dockery v. Shows*, 264 N.C. 406, 411, 142 S.E.2d 29, 33 (1965), or cases finding a non-delegable duty of employers to undertake necessary precautions to protect others from injury caused by acts of independent contractors engaged in peculiarly risky activities, where harm is likely to occur absent such precautions, *Deitz v. Jackson*, 57 N.C. App. 275, 279, 291 S.E.2d 282, 285 (1982). We do not agree that Loflin had such a non-delegable duty in this case.

*Deitz* does not recognize the existence of a duty to undertake safety precautions unless and until the activity is "sufficiently dangerous." *Id.* at 281, 291 S.E.2d at 286. Differently stated, the duty exists only if "harm will likely result if precautions are not taken" by the person with general oversight over the activities. *Id.* at 280, 291 S.E.2d at 286. Despite injury to an invitee, the landowner does not have a duty to inspect or protect against harm where the injury is caused by "a danger collaterally created" by the negligence of another. *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 259, 17 S.E.2d 125, 128 (1941); *see also Woodson v. Rowland*, 92 N.C. App. 38, 45, 373 S.E.2d 674, 678 (1988), *disc. rev. allowed on additional issues*, 324 N.C. 117, 377 S.E.2d 247 (1989).

A parallel limitation exists in the amusement park cases. "There is responsibility only for perils discoverable by ordinary and reasonable inspection and oversight." *Dockery*, 264 N.C. at 412, 142 S.E.2d at 34. Thus, it must be "reasonably foreseeable that harmful consequences will arise from the activity . . . unless precautionary methods are adopted" before the duty to implement precautions arises. *Deitz*, 57 N.C. App. at 279, 291 S.E.2d at 285 (quoting *Dockery*, 264 N.C. at 410, 142 S.E.2d at 32). Not surprisingly, *Dockery* acknowledges that the owner of an amusement park or its general manager "need not provide against unlikely or unforeseeable conduct of a patron" or "for casual or isolated acts of negligence of sub-concessionaire or his employee." 264 N.C. at 413, 142 S.E.2d at 34. *Accord* Restatement (Second) of Torts § 415 comment c

BLEVINS v. TAYLOR

[103 N.C. App. 346 (1991)]

(1965) ("the rule . . . does not impose liability upon the possessor . . . for harm which results from a merely casual act of negligence which is not sufficiently persistent to give the possessor the opportunity to prevent it by the exercise of reasonable care").

This Court "may pass upon the intrinsic dangerousness of an activity as a matter of law." *Deitz*, 57 N.C. App. at 280, 291 S.E.2d at 286. *Deitz* tests whether there is " 'a recognizable and substantial danger inherent' " in an activity, *id.* at 279, 291 S.E.2d at 286, by an analysis of certain factors: "known conditions" under which the activity is carried out, together with "time, place, and circumstances" of the activity, *id.* at 281, 291 S.E.2d at 286. Intrinsic dangerousness is not "the ordinary dangerousness which accompanies countless activities when they are negligently performed." *Id.*

Nothing in the facts before the trial judge suggests that the Society was engaged, on the day of plaintiff's accident, in an intrinsically dangerous activity from which defendant Loflin's duty to take precautionary measures could possibly arise. Rather, the testimony supports the view that plaintiff's injury was the result of an unforeseeable and isolated act by a fellow member of the Society. The Society had safety regulations in place and it had a long, unbroken record of absolute safety. Indeed, plaintiff's own testimony reveals that, by Society custom and under written safety rules, the Society banned live ammunition and projectiles from its re-enactments. As defendant Loflin argues: "The fact that replicas of firearms loaded only with blanks were to be used at the re-enactment effectively negates plaintiff's contention that the re-enactment involved an inherently dangerous activity."

Equally significant, plaintiff conceded in his deposition that neither he nor Loflin could possibly have foreseen the use of live ammunition.

Q You were comfortable enough to go ahead through with the re-enactment without this safety inspection?

A I wouldn't say I was comfortable. I was a little nervous but there was no reason for me to believe that live amunition [sic] would be flying through the air.

Q There would have been no reason for Brown Loflin to have thought that that would be happening either, was there?

A Not that I can recollect.

The deposition testimony of the defendant who fired the shotgun further reinforces the unforeseen circumstances of plaintiff's accident:

Q What did you think as far as whether it [the shotgun] had any bullet or projectile in it?

A That was the last thing on my mind.

Q So, you assumed that it did not, is that correct?

A Yes, sir.

The undisputed facts in this record will not permit the inference that Loflin had knowledge of a substantial danger or sufficient information to foresee injury to an invitee from live ammunition. In these circumstances, no duty to take special precautions for plaintiff's safety arose. Summary judgment in Loflin's favor was, therefore, appropriate.

Affirmed.

Judges ARNOLD and EAGLES concur.