MICHAEL KENT LEE AND WIFE, ANNE P. LEE, PLAINTIFFS v. ALLEN C. BIR, DEFENDANT

No. 9320SC1040

(Filed 18 October 1994)

### 1. Trespass § 17 (NCI4th)— unauthorized cutting of trees and shrubs—punitive damages—sufficiency of evidence

The trial court did not err in denying defendant's motions for directed verdict and judgment n.o.v. on the issue of punitive damages where the evidence tended to show that defendant cut or directed another to cut trees and shrubs from plaintiffs' property when he knew he was trespassing on their property; he instructed his helpers "to be quiet about cutting the trees"; and he instructed one of his helpers to lie during a deposition and say that the trees removed had all been damaged by Hurricane Hugo.

**Am Jur 2d, Trespass §§ 117 et seq.**

LEE v. BIR

[116 N.C. App. 584 (1994)]

2. **Trespass § 28 (NCI4th)— trespass—aesthetic value of property—consideration in determining diminished value**

In an action for trespass where plaintiffs sought damages for defendant's unauthorized cutting of trees and shrubs from their property, the jury could consider the aesthetic value of the property to the landowner plaintiffs and the replacement cost of the trees and shrubs as was reasonably practical in determining the diminished value of the property.

**Am Jur 2d, Trespass §§ 126 et seq.**

Appeal by defendant from judgment entered 14 May 1993 by Judge William H. Helms in Union County Superior Court. Heard in the Court of Appeals 25 May 1994.

On 8 April 1991, plaintiffs filed a complaint against defendant alleging that defendant had unlawfully entered upon plaintiffs' property and "employed and directed others to unlawfully enter upon [p]laintiffs' property . . . to cut trees, laurel, and rhododendron on [p]laintiffs' property, stripping the property of large and beautiful native trees, mountain laurel and rhododendron, leaving stumps, brush, and cut wood remaining on the property." Further, plaintiffs alleged that "such entries and cutting of trees and bushes was without the knowledge or consent of the [p]laintiffs and . . . was intentionally undertaken by the [d]efendant and others at his express employ and direction willfully, wantonly, maliciously, and surreptitiously." Based on these allegations, plaintiffs sought compensatory and punitive damages.

In his answer to plaintiffs' complaint, defendant denied plaintiffs' allegations. At trial, however, defendant admitted cutting the trees on plaintiffs' property.

Subsequently, the jury returned a verdict finding that plaintiffs were entitled to recover $68,266 from defendant for actual damages and $100,000 from defendant for punitive damages. Defendant moved for a judgment notwithstanding the verdict, and plaintiffs consented to a remittitur with respect to the actual damages. Thereafter, the trial court denied defendant's motion, and Judge William H. Helms entered a judgment awarding plaintiffs $60,392.44 in actual damages and $100,000 in punitive damages, both with interest. From this judgment, defendant appeals.

*Griffin, Caldwell, Helder, Lee & Helms, P.A., by W. David Lee, for plaintiff-appellees.*

*Vannoy, Colvard, Triplett & McLean, by J. Gary Vannoy and Jay Vannoy, for defendant-appellant.*

ORR, Judge.

At all times relevant to this action, Plaintiffs Michael Kent Lee and his wife Anne P. Lee owned Lot 21, Section K in the High Meadows Subdivision located in Alleghany County, North Carolina, and Defendant Allen C. Bir owned Lot 20, the lot adjacent to plaintiffs' property. The parties stipulated that "during May, June and July, 1990, certain trees and other natural growth were cut from the lot owned by the plaintiffs without their knowledge or consent." Further, the parties stipulated that between 1 May 1990 and 1 August 1990, the defendant "requested one Kenneth Miles to cut and remove some trees located behind his house in order for him to view Stone Mountain."

At trial, Kenneth Miles testified that in May or June of 1990 he was contacted to do some landscaping work for defendant. Subsequently, Miles went to defendant's home on Lot 20 where defendant took Miles outside on the back deck of his house and "showed [him] from looking straight out on his deck . . . some trees that [defendant] wanted cut from a viewpoint down." Miles testified that the area from which defendant wanted Miles to cut the trees ran from the back of defendant's deck to a specific point on the mountain and a clearing which defendant pointed out to Miles.

Miles further testified that he cut trees down for two or three weeks. During this time, defendant did not indicate to Miles that he might be on someone else's property. Miles then cut up the brush and trees, stacked the wood and began to burn the brush as he was instructed to do by defendant. Thereafter, Miles testified that defendant told him that everything looked good but that they had to "hurry up and get what [they] had to get done because . . . [they were] cutting on somebody else's property." Miles also testified that defendant instructed him to keep quiet about the cutting. Subsequently, Miles also testified that two days before Miles' deposition was to be taken in this case, defendant told Miles to say that the trees that were cut were all from Hurricane Hugo damage.

Defendant also testified at trial. He testified that he "admitted cutting the trees" on plaintiffs' property. Further, he testified that

when he told Miles to say that the trees they had cut down were from Hurricane Hugo damage, defendant was just joking with Miles.

## I.

On appeal, defendant contends that the trial court erred in (1) denying defendant's motion for a directed verdict at the close of plaintiffs' evidence and at the close of all of the evidence on the issue of whether defendant trespassed on plaintiffs' land, (2) denying defendant's motion for a directed verdict and judgment notwithstanding the verdict on the issue of punitive damages, and (3) denying defendant's motion for judgment notwithstanding the verdict on the issue of actual damages.

First, "[a] motion for a directed verdict shall state the specific grounds therefor." N.C.R. Civ. P. 50(a) (1990). "On review of a directed verdict, appellate review is usually limited to those grounds asserted by the movant upon making his motion before the trial judge." *Warren v. Canal Industries, Inc.*, 61 N.C. App. 211, 213, 300 S.E.2d 557, 559 (1983); *See also Southern Bell Tel. and Tel. Co. v. West*, 100 N.C. App. 668, 670, 397 S.E.2d 765, 766 (1990), *aff'd per curiam*, 328 N.C. 566, 402 S.E.2d 409 (1991).

Similarly, "[t]he motion for judgment notwithstanding the verdict is technically only a renewal of the motion for a directed verdict made at the close of all the evidence, and thus the movant cannot assert grounds not included in the motion for directed verdict." *Love v. Pressley*, 34 N.C. App. 503, 511, 239 S.E.2d 574, 580 (1977), *cert. denied*, 294 N.C. 441, 241 S.E.2d 843 (1978).

In the present case, the only grounds defendant asserted as the basis for his directed verdict motion was the insufficiency of the evidence to support an award of punitive damages. Defendant did not assert the insufficiency of the evidence to support plaintiffs' allegations of trespass or to support an award of actual damages. Because defendant failed to assert the insufficiency of the evidence to support plaintiffs' action for trespass or an award of actual damages as grounds for his motion for a directed verdict, defendant has waived his right to appellate review of these issues. *See Southern Bell Tel. and Tel. Co.*, 100 N.C. App. at 670, 397 S.E.2d at 766 (the scope of appellate review of a directed verdict motion "is limited to those grounds asserted by the moving party before the trial court."); *See also Love*, 34 N.C. App. at 511, 239 S.E.2d at 580 (upon review of a motion for judgment notwithstanding the verdict, defendant waives

his right to appellate review of the sufficiency of the evidence to support a verdict as to damages when he did not assert this issue as grounds for his directed verdict motion). Thus, as to defendant's first assignment of error, the only issues before this Court are whether the trial court erred in denying defendant's motions for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages.

[1]  A motion for a directed verdict pursuant to Rule 50(a) of the North Carolina Rules of Civil Procedure raises the question of whether plaintiff's evidence, considered in the light most favorable to the non-movant, is sufficient to submit the issue to the jury. *Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 665, 391 S.E.2d 831, 832 (1990). The court must resolve any conflicts in the evidence in the favor of the non-movant. *Id.* Similarly,

> "[w]hen passing on a motion for judgment notwithstanding the verdict, the same standards applicable to a motion for directed verdict are to be applied. Thus, the court must consider the evidence in the light most favorable to the plaintiff and may grant the motion only if, as a matter of law, the evidence is insufficient to support a verdict for plaintiff. . . ."

*Clontz v. Clontz*, 44 N.C. App. 573, 577, 261 S.E.2d 695, 698, *disc. review denied*, 300 N.C. 195, 269 S.E.2d 622 (1980) (citations omitted). Subsequently, "[t]he court should deny motions for directed verdict and judgment notwithstanding the verdict when it finds any evidence more than a scintilla to support plaintiff's prima facie case in all its constituent elements." *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983). Applying these standards to the issues before us, we conclude that the trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages.

" 'While punitive damages are not recoverable as a matter of right, sometimes they are justified as additional punishment for intentional acts which are wanton, wilful, and in reckless disregard of a plaintiff's rights.' " *Maintenance Equipment Co., Inc. v. Godley Builders*, 107 N.C. App. 343, 351, 420 S.E.2d 199, 203 (1992), *disc. review denied*, 333 N.C. 345, 426 S.E.2d 707 (1993) (citation omitted). In an action for trespass, "[a] jury may award punitive damages if the trespass was committed under circumstances of aggravation or resulted from malicious conduct on the part of the defendant." *Id.*

LEE v. BIR

[116 N.C. App. 584 (1994)]

In proving that a plaintiff is entitled to recover punitive damages in an action for trespass, " '[t]he plaintiff is at liberty to give in evidence the circumstances which accompany and give character to the trespass.' " *Brame v. Clark*, 148 N.C. 364, 366, 62 S.E. 418, 419 (1908) (citation omitted). Further, "[i]f the pleading and evidence so warrant, an issue as to punitive damages should be submitted to the jury." *Hinson v. Dawson*, 244 N.C. 23, 26, 92 S.E.2d 393, 395 (1956).

In the present case, in their complaint, plaintiffs alleged that defendant's trespass on their land and cutting of trees "was intentionally undertaken by the [d]efendant and others at his express employ and direction willfully, wantonly, maliciously, and surreptitiously." At trial, Kenneth Miles testified that defendant told him to clear cut the trees in the area behind defendant's house from defendant's deck to a clearing on the mountain so that defendant could see Stone Mountain. Defendant testified that at the time he told Miles where to cut the trees, he had made no investigation as to the position of his property line. Further, he testified that he just "assumed" that his property line ran perpendicular to the road.

Subsequently, in Miles' statement to Sergeant Hudson of the Alleghany Sheriff's Department, Miles stated that after he and his helper, Dale Wyatt, had cut down the trees as instructed by defendant, defendant told them "he wanted it cleaned up and wanted [them] to hurry and get done <u>because this was someone else's property</u>", and when defendant paid Miles and Wyatt, he told them "to be quiet about cutting the trees." (Emphasis added.) Further, the record reveals that when defendant later found out that plaintiffs were taking Miles' deposition in this case, defendant told Miles not to worry about anything but to just "[t]ell them it was all Hugo damage."

Based on this evidence, we find that more than a scintilla of evidence existed from which the jury could find that defendant's trespass was accompanied by a reckless disregard for plaintiffs' rights and an element of intent after defendant discovered he had trespassed on plaintiffs' property and continued to trespass. Accordingly, we conclude that the trial court properly denied defendant's motions for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages.

## II.

Next, defendant contends that the trial court erroneously allowed the following into evidence: (1) the opinion testimony of Plaintiff Michael Kent Lee and Andrew Ausley as to the value of plaintiffs'

property, (2) the defendant's tax returns and financial statements, and (3) plaintiffs' exhibits 25, 26, and 27 representing the cost of repair to plaintiffs' property. Defendant failed, however, to object to the admission of this evidence at trial.

"In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b). Further, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected," and, where the ruling is one admitting evidence, "a timely objection or motion to strike appears of record." N.C.R. Evid. 103(a)(1).

By failing to object to the admission of this evidence at trial, defendant waived his right to object to the admission of this evidence on appeal. *See State v. Lucas*, 302 N.C. 342, 349, 275 S.E.2d 433, 438 (1981). Accordingly, we need not address these assignments of error.

## III.

[2] Defendant also contends that the trial court erred in allowing evidence concerning the aesthetic value of plaintiffs' property and the replacement cost of the trees and the type of trees used for replacement. We disagree.

In *Harper v. Morris*, 89 N.C. App. 145, 365 S.E.2d 176, *disc. review denied*, 322 N.C. 479, 370 S.E.2d 223 (1988), this Court held that in an action for trespass in which a plaintiff seeks damages for defendant's unauthorized cutting of trees and shrubs from plaintiffs' property, the jury could consider the aesthetic value of the property to the landowner plaintiffs and the replacement cost of the trees and shrubs as is reasonably practicable in determining the diminished value of the property. This Court stated:

> The purpose for which these trees and shrubs were grown and maintained and the contemplated use of the land including aesthetic value to the landowners, in our opinion, directly affects the market value of this property. Similarly the cost of producing the trees and shrubs has some bearing on the value of plaintiffs' land, and one factor in determining the diminished value would be the cost of replacing or restoring the trees and shrubs to the same extent as is reasonably practicable.

*Id.* at 147, 365 S.E.2d at 178.

Further, on the admissibility of evidence showing the cost of replacing or restoring the trees and shrubs, this Court held:

> We believe the testimony of the cost of replacing these trees and shrubs presented by plaintiffs' expert witness was relevant and properly admitted. Its probative value was not outweighed by any possible prejudicial impact on the jury, particularly where as here the trial court cautioned the jury to consider replacement cost only to the extent "that it is reasonable and practicable; that is, not being excessive in relation to the damage to the land itself . . . ."

*Id.*

In the present case, Robert Jordan, a landscape architect, testified over defendant's objection that the cutting of the trees affected the aesthetic value of the property. Further, Jordan testified over defendant's objection that the aesthetic value of the property was particularly diminished by the fact that after the trees were removed, defendant's house was visible and that the "visibility of and the closeness and proximity of [defendant's house] . . . was the major distraction that had occurred." Based on our holding in *Harper*, we conclude that this testimony was properly admitted.

Defendant also contends that the trial court erred in allowing Jordan to testify that the replacement cost for a minimum amount of planting would be thirty-nine to forty thousand dollars and that his replacement plan consisted of planting crab apple trees, chestnut trees, maple trees, river birch trees, and mixed pine trees. In support of his contention, defendant argues that this testimony was not reasonable and practicable and that the replacement cost was excessive in relation to the actual damage to the property itself. We disagree.

Our review of this testimony shows that it was relevant and properly admitted. Further, we find that the probative value was not outweighed by any possible prejudicial impact on the jury, especially in light of the trial court's jury instructions relating to this testimony. The trial court instructed the jury that

> the cost of restoration or replacement of trees and landscaping to the extent that it is reasonable and practical have some bearing on the value of the plaintiffs' land. And one factor in determining the diminished value which would be the cost of replacing or restoring the trees and landscaping to the same extent as is reasonably practical.

LIDA MANUFACTURING CO. v. U.S. FIRE INS. CO.

[116 N.C. App. 592 (1994)]

Now, members of the jury, it's important that you keep in mind that the cost of replacing or restoring the trees and landscaping is not the true measure of damages. However, you may consider the evidence with respect to the estimated cost to replace or restore trees and landscaping as an aid in arriving at the true measure of damages, which as I have already instructed you, is the difference between the fair market value of the property immediately before it was damaged and its fair market value immediately after it was damaged.

Accordingly, we find no error.

No error.

Judges JOHNSON and WYNN concur.