JACQUELYNE JONES, Plaintiff v. LAKE HICKORY R.V. RESORT, INCORPORATED, Defendant

No. COA02-1114

(Filed 17 February 2004)

**1. Negligence— property owner—failure to supervise— parade—not intrinsically dangerous**

    The trial court erred by instructing a jury that it could find that a resort owner's failure to supervise a 4th of July parade was negligence and rendered it liable to a 14-year old burned by a

JONES v. LAKE HICKORY R.V. RESORT, INC.

[162 N.C. App. 618 (2004)]

rollerblading twelve-year-old boy dressed as the Statue of Liberty and carrying a tiki torch. A parade of golf carts at 5 m.p.h. is not intrinsically dangerous and identical parades had been held for many years without injury.

## 2. Agency— lessee association as agent of owner—evidence insufficient

The trial court erred by submitting agency to the jury and instructing the jury that it could find a resort owner liable for injuries suffered in a parade conducted by a lessee association based on notice to the association where there was insufficient evidence that the resort owner exercised control over the details of the work of the association.

## 3. Premises Liability— injury during parade—hazardous condition—evidence of notice by landowner

There was sufficient evidence to permit a jury to find that a resort owner had notice of a hazardous condition in testimony that the assistant manager of the resort could see a twelve-year-old boy rollerblading as the Statue of Liberty with a tiki torch.

## 4. Negligence— jury verdict for plaintiff—basis not distinguished

A jury verdict for plaintiff against a resort owner arising from a 4th of July parade was remanded where the jury did not distinguish between liability based on the resort owner's failure to supervise the parade, the lessee association as the owner's agent and the associations's notice of the hazard, and notice of the hazard by the owner's assistant manager.

## 5. Premises Liability— property owner—obvious hazard— warning given

The obviousness of a hazard and a warning given were not enough to preclude submission to the jury of a resort owner's liability where a rollerblading twelve-year-old boy dressed as the Statue of Liberty and carrying a tiki torch lost control and burned plaintiff.

## 6. Premises Liability— property owner—parade—injury foreseeable

The evidence was sufficient to permit a jury to find that a resort owner could have foreseen an injury from a rollerblading

twelve-year-old boy dressed as the Statue of Liberty and carrying a tiki torch in a 4th of July parade.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgment entered 16 April 2002 and order entered 3 June 2002 by Judge W. Robert Bell in Catawba County Superior Court. Heard in the Court of Appeals 16 April 2003.

*Pipkin, Knott, Clark, & Berger, L.L.P., by Bruce W. Berger and Michael W. Clark, for plaintiff-appellee.*

*Golding, Holden, Cosper, Pope & Baker, L.L.P., by John G. Golding, for defendant-appellant.*

GEER, Judge.

A jury awarded $600,000.00 to plaintiff Jacquelyne Jones for serious burns sustained during an annual Fourth of July parade at defendant's Lake Hickory R.V. Resort when she was set aflame by a 12-year-old boy dressed up as the Statue of Liberty, carrying a lit "tiki" torch, and skating on "in-line" roller blades. The parade had been organized by a "Lessee Association" formed of long-term lessees at the campground. Defendant Lake Hickory R.V. Resort, Inc. (the "Resort") argues on appeal primarily that the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict, and a new trial because: (1) there did not exist any evidence that the Lessee Association was the agent of the Resort, (2) the Resort had no duty to supervise the parade, and (3) the "tiki" torch accident was not foreseeable. We agree that the Resort had no duty to supervise the parade and that the record contains insufficient evidence of control by the Resort over the Lessee Association's activities to support a finding that the Lessee Association was the Resort's agent. Because, however, the record contains evidence that would permit a jury to find that the Resort's Assistant Manager saw the roller-blading Statue of Liberty and yet took no action to eliminate the foreseeable hazard of the lit "tiki" torch, the trial court properly submitted the question of the Resort's liability to the jury. Since we cannot determine whether the jury based its verdict on its finding that the Lessee Association was the Resort's agent or on the inaction of the Assistant Manager, we must remand for a new trial.

The Resort leased individual lots or campsites at Lake Hickory on both a short-term and a long-term basis. The Resort's rules provided

**JONES v. LAKE HICKORY R.V. RESORT, INC.**

[162 N.C. App. 618 (2004)]

for a Lessee Association that was responsible for planning and conducting social activities for lessees or campers. For a number of years, the Lessee Association had arranged for a Fourth of July parade composed of decorated golf carts with the Lessee Association awarding prizes for the best decorations.

On 4 July 1996, members of the Lessee Association directed the golf cart drivers how and where to line up their golf carts. Plaintiff, who was 14 years old, her mother, and another young girl drove to the assembly area in their decorated cart and waited to join the procession.

Michael Morris, a 12-year-old camper, was dressed as the Statue of Liberty. He wore in-line roller blades and carried a "tiki" torch. His grandmother planned to pull him behind her golf cart with a water skiing rope. After lighting his torch, Michael began skating around the assembly area in order to display his costume for the best-decorated golf cart competition. He testified that at one point he saw Ernie Melton, the Resort's Assistant Manager, watching from in front of his house. No one told Michael to extinguish the torch.

While the golf carts were lining up, Michael skated toward plaintiff's golf cart. He lost control of the torch, causing it to set plaintiff and her clothes on fire. Plaintiff suffered severe burns to her neck, chin, chest, shoulders, and wrists and received lengthy and painful treatment for her burns at Frye Hospital, Baptist Hospital, and Shriner's Burn Hospital.

Plaintiff brought suit against the Resort for negligence. The case was tried at the 25 March 2002 civil session of Catawba County Superior Court with the Honorable W. Robert Bell presiding. After denying the Resort's motions for a directed verdict, the trial court submitted three issues to the jury:

1. Was the Lessee Association the agent of the defendant, Lake Hickory RV Resort, Inc., at the time of the July 4, 1996 accident, wherein the plaintiff, Jacquelyne Jones, was injured?

2. Was the plaintiff injured by the negligence of the defendant?

3. What amount is the plaintiff entitled to recover for personal injury?

The jury answered the first two questions "yes" and awarded plaintiff $600,000.00.

The trial court denied defendant's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. In addition, over defendant's objection, the court awarded plaintiff costs in the amount of $7,010.87, including reimbursement for the cost of copies of deposition transcripts, expenses for taking depositions, expert witness fees, and the cost of trial exhibits.

Defendant assigns error to the trial court's denial of its motion for a directed verdict and motion for judgment notwithstanding the verdict. Since defendant chose to offer evidence, defendant waived its motion for a directed verdict made at the close of plaintiff's evidence. *Edwards v. West*, 128 N.C. App. 570, 573, 495 S.E.2d 920, 923, *cert. denied*, 348 N.C. 282, 501 S.E.2d 918 (1998). The question presented by this appeal is whether the evidence of both plaintiff and defendant, when considered in the light most favorable to the plaintiff, was sufficient to submit the first two issues on the verdict sheet to the jury. *Stallings v. Food Lion, Inc.*, 141 N.C. App. 135, 137, 539 S.E.2d 331, 333 (2000). A trial court should deny a motion for directed verdict and judgment notwithstanding the verdict when it finds more than a scintilla of evidence to support plaintiff's prima facie case. *Lee v. Bir*, 116 N.C. App. 584, 588, 449 S.E.2d 34, 37 (1994), *cert. denied*, 340 N.C. 113, 454 S.E.2d 652 (1995).

As an initial matter, plaintiff argues that defendant did not properly preserve its arguments for appellate review because defendant limited its motion for a directed verdict at the close of plaintiff's evidence to the issue of proximate cause. *See Lee*, 116 N.C. App. at 587, 449 S.E.2d at 37 (because defendant failed to assert certain arguments in connection with his motion for a directed verdict, "defendant has waived his right to appellate review of these issues"). Based on our review of the transcript of the argument on defendant's motion for a directed verdict at the close of plaintiff's evidence, we conclude that defendant did sufficiently raise the arguments that it now asserts on appeal.

Plaintiff contended and the trial court instructed the jury that defendant could be found negligent under two theories: (1) Defendant failed to supervise the parade adequately; or (2) defendant, after having actual notice of Michael Morris' conduct, failed to eliminate the hazard. Defendant argues on appeal that the evidence presented at trial fails to support liability under either theory.

JONES v. LAKE HICKORY R.V. RESORT, INC.

[162 N.C. App. 618 (2004)]

Failure to Supervise the Parade

[1] According to plaintiff, defendant had a duty to ensure that the Fourth of July parade on its property was conducted in a safe manner. Plaintiff relies upon *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977) (operator of recreational facility with swimming area could be held liable for failure to guard against potentially dangerous activities in the lake because water poses inherent danger); *Dockery v. World of Mirth Shows, Inc.*, 264 N.C. 406, 142 S.E.2d 29 (1965) (carnival operator liable for defects in ride operated by independent contractor because the ride was inherently dangerous); *Smith v. Cumberland County Agric. Soc'y.*, 163 N.C. 346, 79 S.E. 632 (1913) (operator of fair liable for failure to protect public from injury during balloon ascension performed by independent contractor).

This Court held in *Blevins v. Taylor*, 103 N.C. App. 346, 350, 407 S.E.2d 244, 246 (citations omitted; quoting *Evans v. Rockingham Homes, Inc.*, 220 N.C. 253, 259, 17 S.E.2d 125, 128 (1941) and *Deitz v. Jackson*, 57 N.C. App. 275, 280-81, 291 S.E.2d 282, 286 (1982)), *cert. denied*, 330 N.C. 193, 412 S.E.2d 678 (1991), that this line of authority

> does not recognize the existence of a duty to undertake safety precautions unless and until the activity is "sufficiently dangerous." Differently stated, the duty exists only if "harm will likely result if precautions are not taken" by the person with general oversight over the activities. Despite injury to [a lawful visitor], the landowner does not have a duty to inspect or protect against harm where the injury is caused by "a danger collaterally created" by the negligence of another.

This Court " 'may pass upon the intrinsic dangerousness of an activity as a matter of law.' " *Id.* at 351, 407 S.E.2d at 247 (quoting *Deitz*, 57 N.C. App. at 280, 291 S.E.2d at 286). In making that determination, the Court must decide whether there is a " 'recognizable and substantial danger inherent' " in the activity by considering the known conditions under which the activity was carried out and the time, place, and circumstances of the activity. *Id.* (quoting *Deitz*, 57 N.C. App. at 279, 291 S.E.2d at 286). "Intrinsic dangerousness is not 'the ordinary dangerousness which accompanies countless activities when they are negligently performed.' " *Id.* (quoting *Deitz*, 57 N.C. App. at 281, 291 S.E.2d at 286).

In this case, the activity at issue was a parade of decorated golf carts traveling during the day along the Resort's road that had a speed limit of 5 m.p.h. This activity, standing alone, is not intrinsically dangerous. We cannot say that harm was likely to occur during the parade without oversight by the Resort. *See Adamczyk v. Zambelli*, 25 Ill. App. 2d 121, 125, 166 N.E.2d 93, 96 (1960) ("A parade is of itself not a dangerous instrumentality . . . ."). *But see Morbillo v. Board of Educ.*, 269 A.D.2d 506, 507, 703 N.Y.S.2d 241, 242 (2000) ("Here, the school district furnished and invited the public to approach the moving floats, an activity that may be hazardous if left unsupervised.").

Further, the undisputed evidence established that the campers had conducted identical parades for many years without any injuries or dangerous occurrences. Plaintiff has pointed to no evidence that would have placed defendant on notice that hazardous conduct such as that of Michael Morris might occur at the parade. Without such notice, the golf cart parade cannot be considered sufficiently dangerous to require the defendant as the landowner to supervise the parade. The trial court, therefore, erred in instructing the jury that defendant could be found negligent based on a failure to supervise the parade.

## Negligence Based on Notice of Hazardous Conduct

Alternatively, plaintiff seeks to impose liability on the Resort for its failure to stop the hazardous conduct of Michael Morris once the Resort knew or reasonably should have known of that conduct. The general duty imposed upon a landowner, such as defendant, "is not to insure the safety of his [lawful visitors], but to exercise ordinary care to maintain his premises in such a condition that they may be used safely by [lawful visitors] in the manner for which they were designed and intended." *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 638, 281 S.E.2d 36, 38 (1981).

This duty is not limited to conditions on the property, but can require a landowner to protect visitors from the acts of third parties. *Id.* at 638-39, 281 S.E.2d at 38 (when "circumstances existed which gave the owner reason to know that there was a likelihood of conduct on the part of third persons which endangered the safety of his invitees, a duty to protect or warn the invitees could be imposed"). When, however, the danger "arises out of the negligent or intentional act of a third person, the owner or occupier [of property] will not be held liable for negligence if he did not know of the danger and it had not

existed long enough for him to have discovered it, corrected it or warned against it." *Blevins*, 103 N.C. App. at 349, 407 S.E.2d at 246. *See also Aaser v. City of Charlotte*, 265 N.C. 494, 499-500, 144 S.E.2d 610, 615 (1965) (quoting 4 Am. Jur. 2d, Amusements and Exhibitions § 59) (" 'The proprietor is liable for injuries resulting from the horseplay or boisterousness of others, regardless of whether such conduct is negligent or malicious, if he had sufficient notice to enable him to stop the activity. But in the absence of a showing of timely knowledge of the situation on his part, there is no liability.' ").

### A. *Liability Based on Notice to the Lessee Association.*

[2] Plaintiff argues first that the Resort had actual notice through notice to the Lessee Association. Notice to the Lessee Association would constitute notice to the Resort only if the Lessee Association was acting as an agent of the Resort. *See Roberts v. William N. & Kate B. Reynolds Memorial Park*, 281 N.C. 48, 60, 187 S.E.2d 721, 728 (1972) (holding that "[a] principal is chargeable with and bound by the knowledge of or notice to his agent, received while the agent is acting as such within the scope of his authority and in reference to which his authority extends"). We must, therefore, first address whether the record contains sufficient evidence to submit to the jury the question of the Lessee Association's agency.

Ordinarily, the question whether an agency relationship existed between two parties is a question of fact for the jury. *Hylton v. Koontz*, 138 N.C. App. 629, 635, 532 S.E.2d 252, 257 (2000), *disc. review denied*, 353 N.C. 373, 546 S.E.2d 603 (2001). If, however, "only one inference can be drawn from the facts then it is a question of law for the trial court." *Id.*

As this Court has previously stated, "[t]here are two essential ingredients in the principal-agent relationship: (1) Authority, either express or implied, of the agent to act for the principal, and (2) the principal's control over the agent." *Vaughn v. N.C. Dep't of Human Resources*, 37 N.C. App. 86, 91, 245 S.E.2d 892, 895 (1978), *aff'd*, 296 N.C. 683, 252 S.E.2d 792 (1979). More recently, this Court has confirmed that " '[t]he critical element of an agency relationship is the right of control . . . .' " *Wyatt v. Walt Disney World Co.*, 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (quoting *Williamson v. Petrosakh Joint Stock Co.*, 952 F. Supp. 495, 498 (S.D. Tex. 1997)). Specifically, " 'the principal must have the right to control *both the means and the details of the process* by which the agent is to accomplish his task in

order for an agency relationship to exist.' " *Id.* (quoting *Williamson*, 952 F. Supp. at 498; emphasis added). *See also Hylton*, 138 N.C. App. at 636, 532 S.E.2d at 257 (whether or not a party has retained the right of control "as to details" is the "vital test" in determining whether an agency relationship exists); *Hoffman v. Moore Regional Hosp.*, 114 N.C. App. 248, 251, 441 S.E.2d 567, 569 (the principal must have "control and supervision over the details of the [agent's] work"), *disc. review denied*, 336 N.C. 605, 447 S.E.2d 391 (1994).

The parties do not dispute that the Resort granted the Lessee Association authority over "social function[s] for the over all use of residents of Lake Hickory R.V. Resort." The critical question is whether the Resort had the right to control the details of the manner in which the Lessee Association accomplished its purpose of arranging social functions for the Resort's campers.

The Resort's rules provided for the existence of the Lessee Association and specified that the Association's officers had to be long-term lessees. The evidence also established, however, that the officers were nominated and elected by the lessees, the Resort played no role in the selection of the members of the Lessee Association, and no one from the Resort's management was allowed to be a member of the Association. The Lessee Association was self-sustaining financially; it raised money from bingo and other activities.

With respect to how the Lessee Association operated, the Resort's rules provided generally:

> The Association will work in conjunction with management to provide activities, socials, entertainment, etc. for the enjoyment and use of all. . . .
>
> . . . All functions and activities shall be correlated and reviewed by management.
>
> The Association will remain viable only as long as [a] majority of lessees wish for it to do so, and the Association works in harmony with management and residents of Lake Hickory R.V. Resort.

More specifically, the undisputed evidence indicated that the Lessee Association would meet regularly, discuss possible activities, and then vote on those activities. The Lessee Association would submit a list of the activities to the Resort, which would review those activities and, if approved, advertise them in a newsletter distributed to the campers. The evidence is in dispute whether the Resort's review was

JONES v. LAKE HICKORY R.V. RESORT, INC.

[162 N.C. App. 618 (2004)]

limited to scheduling or whether the Resort could veto activities for reasons unrelated to scheduling.

As for the conduct of the activities themselves, the record contains no evidence suggesting that the Resort exercised any control over how the Lessee Association conducted the approved activities. Plaintiff's witness, the wife of the former Assistant Manager and a former employee of the Resort, testified: "The [Lessee Association's] committee members were the ones to control what was done, how it was done, and they had the right to tell someone they could not do something if they thought that it was an endangerment." With respect to the Fourth of July parade, the evidence was undisputed that the Resort did not participate in arranging for the parade or in overseeing the conduct of the parade.

The above evidence does not establish any right of the Resort to control the details of how the Lessee Association accomplished its work in arranging and conducting social activities for campers. A general authority to veto activities does not establish control over the details of the Lessee Association's work. That authority is consistent with a landlord's right to limit how its tenants use the common areas over which the landlord has retained control. Nor are the requirements that the Lessee Association work in conjunction and harmony with the Resort sufficient to establish the degree of control required for an agency relationship. Such a general requirement of cooperation is comparable to other general rules that this Court has found insufficient to support a finding of agency. *See Hylton,* 138 N.C. App. at 636-37, 532 S.E.2d at 257-58 (rules imposed by hospital on doctors were "general in nature" not addressing the details of the doctors' daily work and did not create agency relationship); *Miller v. Piedmont Steam Co.,* 137 N.C. App. 520, 525, 528 S.E.2d 923, 926-27 (2000) (franchise agreement's detailed standards were adopted to ensure quality service and "did not rise to the level of daily control" over the franchisee's operations); *Hayman v. Ramada Inn, Inc.,* 86 N.C. App. 274, 278, 357 S.E.2d 394, 397 (a franchise agreement did not give rise to an agency relationship even though it required the franchisee to comply with certain standards in order to maintain the premises in a clean, safe, and orderly manner and even though the franchisor retained the right to make inspections of the hotel), *disc. review denied,* 320 N.C. 631, 360 S.E.2d 87 (1987). Because of the lack of evidence that the Resort exercised control over the details of the Lessee Association's work, the trial court erred in submitting the issue of agency to the jury and erred in

instructing the jury that it could find defendant liable based on notice to the Lessee Association.[1]

### B. Liability Based on Notice to the Resort's Assistant Manager.

[3] The conclusion as to the Lessee Association does not, however, mandate judgment for defendant if defendant received actual notice of the hazardous conduct through some other means. Plaintiff has also contended that the Resort received notice of the hazard through its Assistant Manager, Ernie Melton. The parties stipulated that Melton was an agent of the Resort and that he was acting within the course of his employment on 4 July 1996. If plaintiff offered evidence suggesting that Melton had notice of Michael Morris' conduct, that notice could provide a basis for imposing liability on defendant.[2]

Michael testified that when he was skating with his lit torch, he saw Melton sitting in front of his house. Michael's view of Melton was unobstructed. In arguing that this evidence was insufficient, defendant attacks Michael's credibility and suggests that Michael's ability to see Melton does not establish that Melton saw Michael. These arguments addressing credibility and weight are properly presented to a jury. *State v. Hovis*, 233 N.C. 359, 363, 64 S.E.2d 564, 566 (1951). They are not properly asserted in connection with a motion for a directed verdict or for judgment notwithstanding the verdict. *Freeman v. St. Paul Fire & Marine Ins. Co.*, 72 N.C. App. 292, 299, 324 S.E.2d 307, 311, *disc. review denied*, 313 N.C. 599, 330 S.E.2d 609 (1985). Michael's testimony was sufficient to permit the jury to find that defendant had actual notice of Michael's conduct.

[4] We cannot, however, affirm the jury's verdict finding defendant negligent based on this testimony. Because the jury verdict form did not distinguish between liability based on a failure to supervise, liability based on notice to the Lessee Association, and liability based on notice to Melton, we cannot determine upon which basis the jury found defendant liable. We must, therefore, remand for a new trial. *State v. Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (1990) ("Where

---

1. Plaintiff has argued on appeal that defendant may alternatively be held liable based on the theory that defendant and the Lessee Association were acting as a joint enterprise. Since it does not appear that this theory was presented to the trial court or the jury, we will not address it on appeal.

2. While a landowner may be held liable for constructive knowledge of a hazardous condition, plaintiff has not argued that defendant "should have known" of Michael Morris' conduct either because of prior, similar events or because the conduct lasted for such an extended period of time that defendant's employees should have become aware of the conduct.

the trial court erroneously submits the case to the jury on alternative theories, one of which is not supported by the evidence and the other which is, and, as here, it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict, the error entitles defendant to a new trial.").

## Duty to Warn Versus Duty to Correct

[5] Defendant also argues that it could not be held liable because the hazard was obvious and because the President of the Lessee Association warned plaintiff's mother to leave room between her golf cart and Michael Morris. Under the circumstances of this case, however, a jury could conclude that a warning was not adequate and that defendant, upon learning of Michael's conduct, was negligent in not requiring Michael to douse the torch.

In some instances, neither a warning nor the obvious nature of the hazard will be sufficient for the landlord to avoid liability for negligence. A warning will not satisfy a landowner's duty "[i]f a reasonable person would anticipate an unreasonable risk of harm to a visitor on his property, notwithstanding the lawful visitor's knowledge of the danger or the obvious nature of the danger . . . ." *Martishius v. Carolco Studios, Inc.*, 142 N.C. App. 216, 223, 542 S.E.2d 303, 308 (2001), *aff'd*, 355 N.C. 465, 562 S.E.2d 887 (2002). The landowner then "has a duty to take precautions to protect the lawful visitor." *Id.* In addition, this Court held in *Lorinovich v. K Mart Corp.*, 134 N.C. App. 158, 162, 516 S.E.2d 643, 646, *cert. denied*, 351 N.C. 107, 541 S.E.2d 148 (1999), "[w]hen a reasonable occupier of land should anticipate that a dangerous condition will likely cause physical harm to the lawful visitor, notwithstanding its known and obvious danger, the occupier of the land is not absolved from liability."

Here, the lit "tiki" torch was not a fixed object that could readily be avoided. Rather, Michael Morris was skating about on roller blades and, therefore, the direction that the hazard would move could not be predicted. Melton, defendant's Assistant Manager, testified as to the danger, confirming that had he known about Michael's plan in advance, he would have vetoed it because "it's dangerous. It was ridiculous, stupid. . . . To carry a lighted torch on a pair of skates, do you not think that's stupid or dangerous[?]" Given the nature of this hazardous condition, a jury could find that the Resort would satisfy its duty only through elimination of the hazard by requiring that Michael extinguish his torch.

## Proximate Cause

**[6]** Melton's candid testimony also disposes of defendant's argument regarding proximate cause. Michael's conduct was, in Melton's words, "stupid or dangerous" precisely because it created the risk that someone would be burned by the torch. Although the critical issue with respect to proximate cause is the foreseeability of the plaintiff's injury, the law does not require that the precise injury be foreseeable to the defendant. *Martishius*, 355 N.C. at 479, 562 S.E.2d at 896. Instead, the plaintiff is only required to prove that the defendant "might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 234, 311 S.E.2d 559, 565 (1984) (internal quotation marks omitted). The evidence in this case is sufficient to permit a jury to find that defendant could have foreseen or expected that an injury might occur if Michael was allowed to continue to roller-blade with the lit "tiki" torch.

## Conclusion

We therefore conclude that the record contains sufficient evidence for a jury to find defendant liable for plaintiff's injuries. Because this liability may not be based on the theories that defendant failed to supervise the golf cart parade or that the Lessee Association was defendant's agent, we must remand for a new trial. Given our disposition of this case, we do not address defendant's remaining assignments of error.

New trial.

Judge TIMMONS-GOODSON concurs.

Judge BRYANT concurs in part and dissents in part in a separate opinion.

BRYANT, Judge, concurring in part and dissenting in part.

I fully concur in the majority opinion with respect to the issue of duty to supervise and liability based on notice to the Resort's assistant manager but dissent as to the majority's application of the law on agency.

JONES v. LAKE HICKORY R.V. RESORT, INC.

[162 N.C. App. 618 (2004)]

The majority opinion analyzes the element of control by looking for evidence of *actual* control exerted by the Resort. The case law, however, including every case cited in the majority opinion, focuses on the *"right* to control." *See Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (" '[t]he critical element of an agency relationship is the right of control, and the principal must have the right to control both the means and the details of the process by which the agent is to accomplish his task in order for an agency relationship to exist' ") (citation omitted); *Hylton v. Koontz*, 138 N.C. App. 629, 636, 532 S.E.2d 252, 257 (2000) ("[t]he 'vital test' in determining whether an agency relationship exists 'is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details' ") (citation omitted); *Hoffman v. Moore Reg'l Hosp.*, 114 N.C. App. 248, 250, 441 S.E.2d 567, 569 (1994) ("[t]he key factor is whether the alleged employer has the right to supervise and control the details of the work performed by the alleged employee"); *see also Hodge v. McGuire*, 235 N.C. 132, 136, 69 S.E.2d 227, 230 (1952) (noting that "possession of the *right* to exercise control over the servant may be quite as determinative of the relation of master and servant as is the actual exercise of such control" and deeming evidence of right to control sufficient to establish such a relationship).

In this case, there is evidence that the Resort delegated the duty to hold social functions on the Resort property to the Lessee Association and retained the right to review all those functions. In addition, there was testimony from employees that the Resort retained the power to deny activities, that employees would sit in on committee meetings held by the Lessee Association, that the committee would supply the Resort with a list of activities on a monthly basis, and that the Resort enforced its rules to keep the grounds safe. Thus, the majority opinion errs in concluding that there was no evidence on the element of control over the details of the activities by the Lessee Association, and the Resort is not entitled to judgment notwithstanding the verdict on the issue of agency.

Based on the foregoing, I would affirm the trial court's denial of the motion for judgment notwithstanding the verdict as to the issue of agency.